IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-03001-PAB-NRN

ARASON ENTERPRISES, INC.,

      Plaintiff,

v.

CABINETBED INC.,

      Defendant.

---

**ORDER**

---

On June 12, 2018, the Court held a claim construction hearing on the terms

identified in the parties' D.C.COLO.LPtR 14 Joint Claim Terms Chart [Docket No. 38].

Both sides filed briefs in support of the respective interpretations of the disputed terms.

Docket Nos. 39, 41, 43.

## I. BACKGROUND

On September 6, 2016 plaintiff Arason Enterprises, Inc. filed suit against

defendant CabinetBed Inc. in the United States District Court for the Northern District of

Ohio alleging patent infringement. Docket No. 5. On December 6, 2016, the case was

transferred to this Court. Docket No. 1. Plaintiff claims that defendant has infringed

U.S. Patent No. 6,851,139 (issued Feb. 8, 2005) (the "'139 Patent") and U.S. Patent

No. 7,574,758 (issued Aug. 18, 2009) (the "'758 Patent") (collectively, the "patents").

Both patents relate to so-called cabinet beds, wherein a folded mattress is contained

inside a piece of furniture and can be deployed as a bed. *See* '139 Patent, Abstract;

'758 Patent, Abstract. Although they use the same terminology to describe the

disclosed inventions, the '139 Patent is not a relative of the '758 Patent and they have different specifications.

## A. U.S. Patent No. 6,851,139

The preferred embodiment of the '139 Patent is a cabinet bed that unfolds like a clamshell. *See* Fig. 3 below. The front (15) and back (18) walls of the cabinet are attached by hinges to the base of the cabinet, allowing the cabinet to unfold and the three pieces together to support the mattress. '139 Patent at col. 4, ll. 3-26. Each side of the cabinet is split into two sidewalls (21-24) that are connected together by a latching mechanism, which can be released to allow the front and back portions of cabinet to separate. *Id.*, ll. 27-31. When the cabinet is opened and the bed laid out, the side panels remain in place forming a frame around the mattress. *Id.*, ll. 46-65. '139 Patent, Fig. 3.



**Fig. 3**

In an alternative embodiment of the '139 Patent, the back wall of the cabinet remains fixed in place when the cabinet is opened. '139 Patent at col. 6, ll. 19-21. To replace the support for the mattress provided by the back wall (18) in the preferred embodiment, the alternative embodiment uses an extension panel. *Id.*, ll. 54-65. This extension panel (75) can simply be placed at the end of the front wall (15), or it can be attached to the front wall and fold out or slide out to provide support for the end of the mattress. *Id.*, ll. 29-34, 61-67.



**Fig. 11**

'139 Patent, Fig. 11.

Terms that appear in four claims of the '139 Patent are at issue for claim construction: independent claims 1 and 12 as well as dependent claims 19 and 23, which depend from claim 12. *See* Docket No. 38.[1] Claim 1 of the '139 patent is

---

[1] Terms that the parties request construction of are identified in bold.

directed to:

A folding cabinet bed, without a separate mattress platform, said folding cabinet bed comprising:
- a base;
- a top panel;
- a back wall having a first end, a second end, and two **longitudinal** side edges, **hingedly** attached at said first end to said base;
- first and second spaced-apart sidewalls, wherein
    - a. said back wall is connected to said first and second sidewalls at said **longitudinal** side edges;
    - b. said back wall is connected to said top panel at said second end of said back wall;
    - c. said first and second sidewalls are connected at a top end to said top panel; and
    - d. **said first and second sidewalls are not connected to said base**;
- a front wall having a first end, a second end, and two **longitudinal** side edges, **hingedly** attached at said first end to said base;
- third and fourth spaced-apart sidewalls, wherein
    - a. said **front wall is connected to said third and fourth sidewalls** at said **longitudinal** side edges; and
    - b. said third and fourth sidewalls are not connected to said base;
    - a futon mattress, wherein
        - 1. said front wall and said back wall are selectively movable between a closed position and an open position;
        - 2. said futon is enclosed within said folding cabinet bed when said front wall and said back wall are in the closed position: and
        - 3. said safety side panels fit between the **spaced apart sidewalls attached to said front wall** and the snaced [sic] apart sidewalls attached to said back wall **when said front wall and said back wall are in the open position**.

Claim 12 is directed to:

A folding cabinet bed, without a separate mattress platform, said folding cabinet bed comprising:
- a base;
- a top panel;
- a back wall having a first end, a second end, and two **longitudinal** side edges, attached at said first end to said base;
- first and second spaced-apart sidewalls, wherein
    - a. said back wall is connected to said first and second sidewalls at said **longitudinal** side edges;
    - b. said back wall is connected to said top panel at said second end of said

4

back wall; and

c. said first and second sidewalls are connected at a bottom end to said base;

a front wall having a first end, a second end, and two **longitudinal** side edges, **hingedly** attached at said first end to said base;

third and fourth spaced-apart sidewalls, wherein

a. said **front wall is connected to said third and fourth sidewalls** at said **longitudinal** side edges; and

b. said third and fourth sidewalls are not connected to said base;

an **extension** comprising:

a bottom panel, narrower than said front wall; and

a futon mattress, wherein

1. said front wall is selectively movable between a closed position and an open position;

2. said **extension** is selectively movable between a closed position and an open position;

3. said **extension** is sized and configured to enable said bottom panel to fit between said third and fourth sidewalls when said front wall and said **extension** are in the closed position; and

4. said futon is enclosed within said folding cabinet bed when said front wall is in the closed position.

Claim 19 adds to Claim 12 that the "bottom panel is **slidably** connected to said front wall."

Claim 23 adds to Claim 12 a "**means to hold the sidewalls attached to said front wall and the sidewalls attached to said back wall adjacent to each other when said front wall is in the closed position**."

**B.  U.S. Patent No. 7,574,758**

To what is otherwise essentially the same structure as an alternative embodiment of the '139 Patent, the '758 Patent adds an extendable structure containing at least one drawer that is housed at the bottom of the cabinet. '758 Patent at col. 5, ll. 18-26.  The extendable structure uses multiple telescoping rails to allow the drawer to be pulled out of the bottom of the cabinet. *Id*., ll. 26-32.  When the

5

telescoping rails are extended, the extendable structure provides support for the sleeping platform, which is formed from the front wall of the cabinet, an extension panel, and the mattress contained in the cabinet. *Id.*, ll. 36-53. In addition, a "center support 52 may be provided under the bottom panel 25 between the sidewalls 21, 22." *Id.*, ll. 33-34.



Figure 5

'758 Patent, Fig. 5.

Terms that appear in three claims of the '758 Patent are at issue: independent claim 1 and dependent claims 4 and 10, which depend from claim 1. *See* Docket No. 38.

Claim 1 of the '758 Patent is directed to:

A folding cabinet bed system, comprising:

6

a cabinet assembly, comprising:

a top panel;

a back wall substantially perpendicular to said top panel, and having a first end, a second end, and two **longitudinal** side edges;

first and second spaced-apart sidewalls **orthogonal** to said top panel and said back wall, wherein

a. said back wall is directly connected to said first and second sidewalls at said **longitudinal** side edges;

b. said back is directly connected to said top panel at said second end of said back wall; and

c. said first and second sidewalls are directly connected at a top end to said top panel;

such that said top panel, said back wall, and said first and second sidewalls form a cabinet having a substantially rectangular compartment having an open bottom and an open front;

a base assembly, comprising:

a top piece;

a back piece;

two spaced-apart sidepieces **orthogonal** to said top piece and said back piece; and

at least **one support piece** provided on an underside of said top piece between said two spaced-apart sidepieces, said **support piece** being **sized and configured to prop up said top piece**; and

an **extendable structure** housed within said base assembly;

said **extendable structure comprising**:

at least one drawer on a front portion of said base assembly; and

a **plurality of telescoping rails** attached to said at least one drawer and extendable approximately perpendicular to the front portion of said base assembly upon opening of said drawer;

wherein said cabinet assembly is sized and configured to be mounted on said base assembly; and

a movable sleeping platform, comprising:

a front wall having a first end, a second end, and two **longitudinal** side edges, **hingedly** attached at said first end to a latitudinal front portion of said top piece of said base assembly, wherein said front wall is selectively movable between a closed vertical position and an open horizontal position; and

an extension panel attached to said front wall and configured to make said front wall effectively longer, said extension panel being selectively movable between a closed position and an open position and when said extension panel is in the closed position, the extension panel is parallel to the front wall; and

a mattress enclosed within said cabinet;

wherein said **extendable structure** supports said front wall and said extension

panel when said front wall and said extension panel are in the open position, **said plurality of telescoping rails being sized and configured to accommodate the size of the front wall and the extension panel**.

Claim 4 further requires "a **plurality** of support mechanisms mounted to said **plurality of telescoping rails**."

Claim 10 instead adds "a **latching mechanism** to releasably hold said front wall in the closed position."

## II. LEGAL STANDARDS FOR PATENT CLAIM CONSTRUCTION

Claim construction is a question of law for the court, *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015), guided by Federal Circuit precedent. *See SunTiger, Inc. v. Scientific Research Funding Group*, 189 F.3d 1327, 1333 (Fed. Cir. 1999). The Federal Circuit has made clear that "there is no magic formula or catechism for conducting claim construction." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005) (en banc). Nevertheless, there are several key sources and doctrines that should be consulted and applied, but "[t]he sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." *Id.*

The starting point is the "bedrock principle" that "'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The words of the claims "'are generally given their ordinary and customary meaning,'" *id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90

F.3d 1576, 1582 (Fed. Cir. 1996)), which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention," *id.* at 1313; *see CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("Generally speaking, [courts] indulge a 'heavy presumption' that a claim term carries its ordinary and customary meaning."). In those instances when the claim language "involves little more than the application of the widely accepted meaning of commonly understood words," construction is relatively straightforward and "the ordinary meaning . . . may be readily apparent even to lay judges." *Phillips*, 415 F.3d at 1314. When the claim terms have a particular meaning in the field, however, courts "look[ ] to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Id.* (quoting *Innova*, 381 F.3d at 1116). These sources include "'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Id.*

The context in which a term is used, both in the asserted claim as well as in other claims of the patent, can be valuable and instructive. *Phillips*, 415 F.3d at 1314. In addition, the patent specification – the text and figures of the patent that precede the claims – "'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* at 1315 (quoting *Vitronics*, 90 F.3d at 1582). With that said, "the claim requirement presupposes that a patent applicant defines his invention in the claims, not in the specification." *Johnson & Johnston Associates Inc. v. R.E. Service Co., Inc.*, 285 F.3d

1046, 1052 (Fed. Cir. 2002); *see PSC Computer Products, Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1359 (Fed. Cir. 2004) ("'[T]he claims of a patent limit the invention, and specifications cannot be utilized to expand the patent monopoly'") (quoting *United States v. Adams*, 383 U.S. 39, 48-49 (1966)).

If necessary, courts may also consider the patent's prosecution history – the official record of the patent application and subsequent process before the U.S. Patent and Trademark Office, which "provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. Nevertheless, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, . . . it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* And, although courts may consult extrinsic evidence such as "expert and inventor testimony, dictionaries, and learned treatises," such evidence is "'less significant than the intrinsic record,'" i.e., the specification and prosecution history, and courts must be wary not to use extrinsic evidence to override the meaning of the claim terms demonstrated by the intrinsic evidence. *Id.* at 1317-19 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). That is, "extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1319.

In short, a court must construe the claim terms as they would be viewed by "the ordinary artisan after reading the entire patent." *Id.* at 1321. This is important in order to respect the public notice function of patents:

The patent system is based on the proposition that claims cover only the invented subject matter. As the Supreme Court has stated, "[i]t seems to us that nothing can be more just and fair, both to the patentee and the public, than that the former should understand, and correctly describe, just what he has invented, and for what he claims a patent."

*Id.* at 1321 (quoting *Merrill v. Yeomans*, 94 U.S. 568, 573-74 (1876)).

## III. ANALYSIS[2]

Plaintiff withdrew its request for construction of certain terms in its response brief. Docket No. 41 at 17-20. The Court addresses the remaining terms by grouping certain terms together where the terms present common issues.

### A. "not connected," "connected," and "attached"

The following claim terms contain these words:

**"said first and second sidewalls are not connected to said base"**

This term appears in Claim 1 of the '139 Patent. Plaintiff argues that this term should not be construed. Docket No. 41 at 3-4. Defendant argues that this term should means that "the first and second sidewalls are not fixedly joined to the base, so as to permit separation during transition of the bed between the closed position and the open position." Docket No. 39 at 26.

**"front wall is connected to said third and fourth sidewalls"**

This term appears in Claims 1 and 12 of the '139 Patent. Plaintiff argues that this term should not be construed. Docket No. 41 at 4-5. Defendant argues that this

---

[2] Patent claims are to be construed through the eyes of a person of ordinary skill in the art ("POSITA") at the time of the invention. The parties do not dispute the appropriate level of skill in the art in their claim construction arguments. Although the level of skill is important in some claim construction disputes, the Court finds that it does not impact the proper constructions of the terms at issue and declines to make findings on appropriate level of skill.

term means "front wall is fixedly joined to the third and fourth sidewalls, so as to prevent separation during transition of the bed between the closed position and the open position." Docket No. 39 at 23.

### "spaced apart sidewalls attached to said front wall . . . when said front wall and said back wall are in the open position"

This term appears in Claim 1 of the '139 Patent. Plaintiff argues that this term should not be construed. Docket No. 41 at 5-6. Defendant argues that this term should be construed as "third and fourth sidewalls that are connected to the front wall when the bed is in the open position." Docket No. 39 at 25. As defendant clarified at the hearing, this construction is meant to resolve a lack of antecedent basis issue by specifying that the "spaced apart sidewalls" are the previously mentioned third and fourth sidewalls.

The essential dispute between the parties with respect to "connected" and "not connected" terms is about the degree to which the sidewalls must be connected to or disconnected from the front and back walls. Plaintiff takes the position that the type of connection need not be defined by the Court, but acknowledged at the hearing that the claims do imply that there is a structural connection between the sidewalls and the front or back wall. Plaintiff's main contention is that defendant's construction imports a firm, inflexible connection that is not warranted by the claim language or other evidence. Defendant, by contrast, argues that a fixed connection is necessarily implied by the sidewalls moving along with the front and back walls as the clamshell opens. The Court agrees in part with each party and concludes that these terms warrant construction.

In the context of the '139 Patent, the term "connected" implies a physical attachment between the sidewalls and the front and back walls, not merely that the

sidewalls are in contact with the adjacent walls.  This conclusion is supported by the presumption that the terms "connected" and "not connected" must have different meanings.  *Cf. Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999) ("The doctrine of claim differentiation . . . is ultimately based on the common sense notion that different words or phrases . . . are presumed to indicate . . . different meanings and scope." (citing *Comark Communications Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998)).  It is also supported by the fact that the elements claimed as "not connected" are in contact depending on the configuration of the cabinet, i.e., the first and second sidewalls are in contact with the base, to which they are "not connected," when the clamshell is closed.  *See* '139 Patent, Fig. 1.

However, the Court finds that the "fixedly joined" construction advocated by defendant too narrowly confines the nature of the connection and is not warranted by the intrinsic evidence.  *See David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 994 (Fed. Cir. 2016) (holding that a disclaimer of claim scope must be "based on clear and unmistakable statement[s]" (citing *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1024 (Fed. Cir. 2015)).  Further, the functional description of "prevent[ing] separation" that defendants seek to import from the specification is unwarranted.  *See Hill-Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1340-41 (Fed. Cir. 2000) (affirming a claim construction importing a functional aspect where the function was part of the "ordinary meaning of the word").  The Court finds that "connected" in this context means that the pieces are "attached" to each other, but does not necessarily require that the attachment be in a fixed position.  Accordingly, the

Court construes the first two terms to mean that the "said first and second sidewalls are not attached to the base" and "front wall is attached to said third and fourth sidewalls."

With respect to the third term, the Court finds that construction is warranted to identify the "spaced apart sidewalls attached to said front wall" as the "third and forth sidewalls." Plaintiff does not dispute that this is the correct interpretation of the term and, while it argues that the defendant's reference to the specification "is not how the patent claim terms are written," Docket No. 41 at 5-6, the problem here is, in fact, that the claim is not correctly drafted with a proper antecedent basis for the "spaced apart sidewalls." Therefore, the Court adopts defendant's construction, which accords with the intrinsic evidence in the specification and correctly identifies the corresponding sidewalls.

## B.  Means Plus Function Term

**"means to hold the sidewalls attached to said front wall and the sidewalls attached to said back wall adjacent to each other when said front wall is in the closed position"**

So-called "means-plus-function" claiming occurs when a claim term is drafted in a manner that invokes 35 U.S.C. § 112, para. 6,[3] which states:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

"[T]he use of the word 'means' in a claim element creates a rebuttable presumption that

---

[3] This paragraph has been restyled 35 U.S.C. § 112(f) without material changes, but the patents claim priority to before the change and, therefore, the prior statute applies.

§ 112, para. 6 applies." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (citing *Personalized Media Communications, LLC v. International Trade Commission*, 161 F.3d 696, 703-04 (Fed. Cir. 1998)). "In making the assessment of whether the limitation in question is a means-plus-function term subject to the strictures of § 112, para. 6, [the Federal Circuit has] emphasized that the essential inquiry is not merely the presence or absence of the word 'means' but whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.* (citing *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996)). Construction of a means-plus-function limitation is a two-step process. "First, the court must determine the claimed function. Second, the court must identify the corresponding structure in the written description of the patent that performs the function." *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012) (*quoting Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006)); *see also ABT Sys., LLC v. Robertshaw Controls Co.*, No. 11 C 5112, 2013 WL 1498997, at *4 (N.D. Ill. Apr. 11, 2013) (language in a patent specification may support an argument that a limitation denotes structure). A means-plus-function limitation covers only "the corresponding structure . . . described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. To determine whether a means-plus-function term discloses sufficient structure, the relevant inquiry is "to look at the disclosure of the patent and determine if one of skill in the art would have understood that disclosure to encompass" the technology at issue. *Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1385 (Fed. Cir. 2009) (quoting *Med. Instrumentation*

*& Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1212 (Fed. Cir. 2003)).  "It is not proper to look to the knowledge of one skilled in the art apart from and unconnected to the disclosure of the patent."  *Id.*

The term at issue appears in Claim 23 of the '139 Patent.  Plaintiff argues that this term is not a means-plus-function term and does not need construction.  Docket No. 41 at 6-7.  The basis for plaintiff's argument, however, is unclear because plaintiff does not identify any structure in the claim that provides the function "to hold the sidewalls" in position, other than the generic term "means."  *Id.* at 7; *see also Massachusetts Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006) ("The generic terms 'mechanism,' 'means,' 'element,' and 'device,' typically do not connote sufficiently definite structure."). Defendant argues that this term specifies a means with a function "to <u>prevent the separation of the front wall and back wall by</u> hold<u>ing</u> the first sidewall adjacent the third sidewall and hold<u>ing</u> the second sidewall adjacent the fourth sidewall when the front wall is in the closed position" and that the corresponding structure disclosed in the specification is "a releasable latching mechanism 42 bridging the first and third sidewalls and a releasable latching mechanism 43 bridging the second and fourth sidewalls, and equivalents thereof." Docket No. 39 at 27; *see also* '139 Patent, Fig. 2, at col 5, ll. 38-42).  At the hearing, defendant stated that it would withdraw the underlined portion identified above, and plaintiff agreed that, if the term was construed according to means-plus-function principles, defendant's revised construction would be acceptable.  The Court finds that plaintiff has not overcome the presumption that this claim should be construed as a means-plus-function term and agrees that defendant's modified construction correctly

identifies the function and corresponding structure. Accordingly, the Court construes this term to mean "a releasable latching mechanism bridging the first and third sidewalls and a releasable latching mechanism bridging the second and fourth sidewalls, and equivalents thereof, that holds the first sidewall adjacent the third sidewall and holds the second sidewall adjacent the fourth sidewall when the front wall is in the closed position."

### C.   Support Piece

**"support piece . . . sized and configured to prop up said top piece"**

This term appears in Claim 1 of the '758 Patent. Plaintiff argues that this term should not be construed. Docket No. 41 at 8. Defendant argues that this term means "a static structure that, independent of the sidepieces, props up the top piece." Docket No. 39 at 19.

The parties' main dispute with respect to this term is whether the support piece is necessarily separate from the sidepieces. Defendant's argument that the support piece is distinct from the side walls is supported by the claim language, specification, prosecution history, and extrinsic evidence. With respect to the claim language, Claim 1 requires that the support piece be "between said two spaced-apart sidepieces," which implies that the support piece cannot also be a sidepiece. The specification describes a "center support 52" that fits the claim's requirements of the support piece, namely, it is between the sidepieces and props up the top piece. '758 Patent at col. 5, ll. 32-36 ("A center support 52 may be provided under the bottom panel 25 between the sidewalls 21, 22. FIGS. 5 and 6 show the platform support structure 48 in the open configuration

without the bed platform 51.").  During prosecution, the patentee amended Claim 1 to add reference to the support piece and argued that it was supported by the disclosure of the center support 52.  Docket No. 40-5 at 15.  The patentee argued that the support piece distinguished Claim 1 over prior art which "fail[ed] to disclose a base assembly *enclosing* the support piece between first and second spaced-apart sidepieces or that the center support provides support to the top piece as is recited in independent Claim 1."  *Id*. at 17 (emphasis added).  Thus, the intrinsic and extrinsic evidence indicates that the support piece is separate from the sidewalls, which it is between and which enclose it.  The Court, however, finds no support for defendant's contention that the support piece must be a "static structure" or omission of the requirement that it be "sized and configured" for its function of propping up the top piece.  Therefore, the Court construes the term "support piece . . . sized and configured to prop up said top piece" to require a "support piece that is independent of the sidepieces . . . sized and configured to prop up said top piece."

### D.  Telescoping Limitations

#### "plurality"

This term appears in Claims 1 and 4 of the '758 Patent.  Plaintiff argues that "plurality" means "the state of being numerous," Docket No. 41 at 9.  At the hearing, the parties agreed that "a plurality of" simply means "multiple."  The Court agrees that this is the correct construction.

#### "telescoping"

This term appears in Claims 1 and 4 of the '758 Patent.  Plaintiff argues that

"telescoping" means "to be or become shortened or condensed." Docket No. 41 at 12.

Defendant argues this term should be construed as "having multiple slidingly engaged

extendable sections." Docket No. 38 at 24.

### "plurality of telescoping rails"

This term appears in Claim 1 of the '758 Patent. Plaintiff maintains its above

definition for "telescoping" and does not propose a construction for "rails." Docket No.

41 at 9. Defendant argues that this term means "multiple rails, each rail having multiple

slidingly engaged extendable sections upon which the front wall and extension panel

are supported." Docket No. 39 at 14.

### "said plurality of telescoping rails being sized and configured to accommodate the size of the front wall and the extension panel"

This term appears in Claim 1 of the '758 Patent. Plaintiff argues that the words

"plurality" and "telescoping" should be defined as above and that the remaining words

should not be construed. Docket No. 41 at 11. Defendant argues that this term

requires that "the multiple telescoping rails extend the length of the front wall and the

extension panel combined when resting atop the rails." Docket No. 39 at 14.[4]

The remaining disputes between the parties are about what it means to be

"telescoping" and what it means for the telescoping rails to be sized and configured to

support the front wall and extension panel.

The Court finds that plaintiff's proposed construction for "telescoping" is

_____

[4] Defendant modified its construction from the construction advanced in the
parties' joint claim chart, but, under the Court's local patent rules, defendant filed the
first brief and made the modification at that point. Docket No. 39 at 14 n.12; *see also*
Docket No. 38 at 23.

inappropriate.  Plaintiff advocates a dictionary definition, which is disfavored.  *Phillips*, 415 F.3d at 1321-24 (explaining the deficiencies of dictionaries as sources for appropriate constructions of claim terms).  Moreover, the dictionary definition advanced by plaintiff does not correspond well with the intrinsic evidence because there is nothing in the claimed invention that is "condensed."  Defendant's construction, by contrast, is supported by the surrounding claim language, which provides that the "telescoping rails" are themselves "extendable" in addition to being part of an "extendable structure." Thus, the claim language supports a construction that requires telescoping rails that are themselves capable of extending.  Further, the implication of the claim language is that the mechanism for extending the rails is by "telescoping," i.e., by way of a mechanism reminiscent  of the familiar image of an extendable telescope whose interlocking pieces slide out as it is extended.  That "telescoping" implies and requires an aspect of sliding like the sections of an extendable telescope is supported by the specification, which depicts the telescoping rails sliding as the extendable structure is pulled out, in a manner analogous to the way the sections of an extendable telescope slide along each other as it is extended.  *See, e.g.,* '758 Patent at col. 3, ll. 43-44 ("the drawers and rails slide into the cabinet base"), col. 5, ll. 46-53 ("For example, the telescoping rail mechanism can be constructed using readily available hardware such as drawer slides or similar devices, or can be constructed using dadoes with mating runners in and on the rails themselves with a pin-in-dado or other mechanism to ensure that the rails 50 extend to the proper length to accomplish the telescoping and accommodate the mattress platform 51.").  Indeed, the '758 Patent is titled "Folding Cabinet Bed with Telescoping *Slide-Out* Support Platform."  *Id*. at col. 1, ll. 1-3 (emphasis added).

The sliding pieces of the telescoping rails depicted in the specification are not, however, nested inside one another like an extendable telescope. *Id.*, Fig. 5. Likewise, although the analogy to an extendable telescope implies multiple sections and the specification depicts multi-piece rails, there is nothing in the claim language or specification that requires that the rails be made in this way so long as they are "rails" that are "extendable" by "telescoping."[5] Therefore, the Court finds that defendant's construction is appropriate insofar as it requires that the multiple rails extend by sliding, but not insofar as it requires that the rails themselves be made up of multiple sections.

Turning to the issue of how the telescoping rails must be "configured to accommodate" the mattress support, the Court finds that defendant's definition is inconsistent with the claim language and the specification. In particular, defendant requires that, in providing support, the telescoping rails "extend the length of the front wall and the extension panel combined." However, the claim language does not require that the rails be the same length as the front wall and extension panel; rather, the rails must be able to "accommodate" whatever size the front wall and extension panel might be. Moreover, the specification does not depict the telescoping rails extending all the way to the end of the extension panel or require that they do so. Instead, Figure 3 depicts a slight overhang where the extension panel extends out beyond the end of the telescoping rails.

---

[5] The Court does not know, as a practical matter, how something could extend by sliding without also having multiple pieces, but that does not mean that having multiple sections is, as a matter of law, a necessary feature of "telescoping" within the context of the claims at issue.



'758 Patent, Fig. 3.  Even with such an overhang, it is apparent that the depicted

telescoping rails are nonetheless sized and configured to support the extension

platform, and there is nothing in the claim language or any disclaimer in the

specification that excludes an overhang of the sort depicted in Figure 3 from the scope

of the claims.  *See David Netzer Consulting Eng'r LLC*, 824 F.3d at 994.  Thus, the

Court rejects defendant's construction insofar as it would require that the telescoping

rails extend the length of the front wall and the extension panel combined in order to

meet the limitation requiring that the rails be "sized and configured to accommodate the

size of the front wall and the extension panel."

Accordingly, the Court construes "telescoping" to mean "extends by sliding" and "plurality of telescoping rails" to mean "multiple rails that extend by sliding." The Court will not construe the phrase "being sized and configured to accommodate the size of the front wall and the extension panel" because the patent does not give a special meaning to these words that is different from their lay meaning and a jury can determine, as a factual matter, whether telescoping rails are sized and configured to support a sleeping platform.

### E. "orthogonal"

This term appears in Claim 1 of the '758 Patent. The parties agreed at the hearing that this term means "perpendicular" in the context of the claims. The Court finds this construction is correct and is warranted to avoid jury confusion.

### F. Other Terms

Plaintiff argues that **"hingedly"** should be construed as "pivotably," that **"extension"** should be construed as "a section or line segment forming an additional length," that **"slidably"** should be construed as "to move or pass smoothly or easily," that **"extendable structure"** should be construed as "a section or line segment forming an additional length," that **"latching mechanism"** should be construed as "to hold in the open or closed position," and that **"longitudinal"** should be construed as "of or relating to the length or lengthwise dimension." Docket No. 41 at 13-19. Defendant argues that these terms do not need construction because "no further definition is necessary for the jury to understand the terms." Docket No. 39 at 28. The Court agrees that these terms should not be construed. Plaintiff has not shown that a dispute

over the meaning of any of these terms is material to the parties' disputes. *Cf. O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute."). These terms are used in the claims with their ordinary meaning or, in the case of novel words like "slidably," a meaning that is obvious in context. Additionally, some of these terms are explained in the claim, such as for the term "extendable structure," which is defined by the elements it comprises. Further, the definitions advanced by plaintiff are in many cases more likely to create confusion than reduce it. For example, plaintiff's definition of "latching mechanism," replaces a structure with a function, "to hold in an open or closed position." *See* Docket No. 41 at 17.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that the parties' Joint Motion for Determination [Docket No. 44] is **GRANTED**. It is further,

**ORDERED** that the disputed claim terms will be construed as indicated above.


DATED September 30, 2018.

BY THE COURT:


 s/Philip A. Brimmer                  
PHILIP A. BRIMMER
United States District Judge
