IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-03001-PAB- NRN

ARASON ENTERPRISES, INC.

    Plaintiff,

v.

CABINETBED INC.

    Defendant.

---

**DEFENDANT CABINETBED INC.'S MOTION TO EXCLUDE TESTIMONY OF RENÉ POULIN ON ALLEGED VALIDITY**

---

**I.      INTRODUCTION**

Defendant CabinetBed moves the Court pursuant to Section III(G) of the Court's Practice Standards, Fed. R. Civ. P. 37, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Fed. R. Evid. 702 and 403 to exclude the opinion testimony of plaintiff's expert, Mr. René Poulin, on alleged validity of claim 1 of U.S. Patent No. U.S. Patent No. 7,574,758 (the '758 patent).

Mr. Poulin's report[1] opines that a person of ordinary skill in the art ("POSITA") would not have been motivated to combine features from different prior art references because he views a POSITA as any mere "consumer of beds," including children as young as five-years old. Because Mr. Poulin contends the combinations of features proposed by CabinetBed's expert would not have been obvious to a consumer, such as young child, Mr. Poulin concludes that claim 1 is not obvious. But Mr. Poulin's view that a five-year old child is a POSITA for the '758

---

[1] January 21, 2019 Expert Report of René Poulin ("Poulin Report") (Ex. A).

1

patent—but an individual with two years of experience in the reconfigurable furniture industry **is** not—is absurd and contrary to established POSITA law. *See infra* p. 8.

Mr. Poulin's new POSITA definition is also dramatically different than the one previously offered by plaintiff and relied upon by CabinetBed. Early in this case, and in response to an Interrogatory, plaintiff contended that a POSITA was like the inventors, having "undergraduate and graduate degrees, moderate-to-advanced woodworking skills, creativity, spatial reasoning, mechanical aptitude, public relations, marketing, and strong interpersonal and communication skills." This discovery response was never updated or supplemented by plaintiff, and this was the definition of a POSITA used[2] for claim construction, infringement and invalidity contentions, as well as for CabinetBed's expert report on invalidity.

Plaintiff's expert's new definition of a POSITA—any user of beds—is fundamentally different from that identified by plaintiff in response to Interrogatory No. 1. Each of Sections V(1), V(3) and VI of the Poulin Report includes or is based on testimony inconsistent with plaintiff's response to CabinetBed's Interrogatory No. 1. Pursuant to Fed. R. Civ. P. 37(c)(1), Plaintiff should be precluded from offering such testimony and opinions for any purpose.

Of course, Mr. Poulin could not have reached such a ludicrous conclusion without basing his analysis on incorrect legal principles and tests. Mr. Poulin's opinions regarding obviousness of claim 1 (Sections V(1), V(3) and VI of the Poulin Report) fail to comply with the admissibility requirements necessary for expert testimony under *Daubert* and Federal Rule of Evidence 403 and 702. For this additional reason, the Court should strike Mr. Poulin's opinions set forth in Sections V(1), V(3) and VI of the Poulin Report and related proposed testimony.

---

[2] As discussed below, CabinetBed's POSITA definition is phrased differently but is substantively similar in scope.

Finally, Mr. Poulin's opinions regarding the priority of claim 1 of the '758 patent (and what constitutes prior art) are wholly conclusory, and based on flawed legal principles. Accordingly, the Court also should strike Mr. Poulin's opinions set forth in Section V(2) and related proposed testimony.

**II.     LEGAL STANDARD**

Expert testimony is admissible pursuant to Federal Rule of Evidence 702 if it is relevant and reliable. *Daubert*, 509 U.S. at 589. Testimony is relevant if it will assist the trier of fact in understanding a fact at issue. *Id.* at 591–92. As to the reliability requirement, the Court must act as a "gatekeeper" to exclude "junk science" by making a preliminary determination that the expert's testimony is reliable. *Id.* Expert testimony must be the product of: (1) sufficient facts or data, (2) reliable principles and methods, and (3) the reliable application of those principles and methods to the facts of the case. Fed. R. Evid. 702.

The burden of establishing the admissibility of expert testimony falls on the party seeking its admission. *See Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987). But the Court must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1998) (quoting *Daubert*, 509 U.S. at 592). An expert must do more than merely list elements and then conclude with a stock phrase on the ultimate issue. *Innogenetics, N.V. v. Abbott Labs*, 512 F.3d 1363, 1373 (Fed. Cir. 2008). Unsupported and conclusory testimony based on an expert's say-so do not support a finding of reliability—"nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho*, 526 U.S. at 157 (quoting *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997).

3

The Court must "perform[ ] a two-step analysis" of the admissibility of opinion testimony. *103 Investors I, L.P. v. Square D Co.,* 470 F.3d 985, 990 (10th Cir. 2006). After determining whether the expert is qualified, the specific proffered opinions must be assessed for reliability. *See id.;* Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case"). The Court's determination regarding admissibility of expert testimony is reviewed under the abuse-of-discretion standard. *General Elec. Co. v. Joiner*, 522 U.S. 136, 137 (1997).

In addition, Fed. R. Civ. P. 26(e) requires a party to supplement its response to interrogatories, and Fed. R. Civ. P. 26(a) requires an expert to provide a report including, among other information, "a complete statement of all opinions the witness will express and the basis and reasons for them the subject matter on which the witness intends to testify." For this reason, an expert witness may not testify to information not disclosed in the witness's expert report unless the failure to include that information was "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).

### III. ARGUMENT

#### A. Mr. Poulin Advances A Definition Of POSITA Fundamentally Different From The Definition Provided By Plaintiff In Its Interrogatory Responses.

##### 1. The parties' POSITA proposals prior to the Poulin Report

On May 3, 2017, plaintiff responded to CabinetBed's Interrogatory No. 1, which sought plaintiff's proposed definition of a POSITA, by stating:

> Without waiving, the inventors of the '139 and '758 patents combined have undergraduate and graduate degrees, moderate-to-advanced woodworking skills, creativity, spatial reasoning, mechanical aptitude, public relations, marketing, and strong interpersonal and communication skills, all of which were relevant to their conception of the inventions. Plaintiff contends that similar background and

4

experience would be relevant for one construing claims of the '139 or '758 patents, or to one applying the doctrine of equivalents to the '139 or '758 patents.

Plaintiff's Responses to CabinetBed's First Set of Interrogatories (Ex. B), pp. 1-2.

At the time of the invention, the inventors had more than two years of experience of reconfigurable furniture design. Specifically, Mr. and Mrs. Arason filed a provisional patent application on November 4, 2002 for a cabinet bed—from which U.S. Patent No. 6,851,139 (previously asserted) claimed priority—and a non-provisional application for the '139 Patent on November 3, 2003. Therefore, even if claim 1 of the '758 patent were entitled to an earliest priority date of April 11, 2005, Mr. and Mrs. Arason already had more than two years of experience designing reconfigurable furniture, and more than three years of experience as of the filing date of the application for the '758 patent.

Accordingly, throughout the course of discovery and claim construction, up until the deadline for serving final rebuttal expert reports, CabinetBed has relied on plaintiff's contention that a POSITA was an individual having a background and experience level similar to inventors, including "combined undergraduate and graduate degrees," and "moderate-to-advanced woodworking skills, creativity, spatial reasoning, mechanical aptitude…" and at least two years of experience in designing reconfigurable furniture.

CabinetBed's expert, Ronald Kemnitzer, proposed a POSITA not significantly different from plaintiff's. Each of Mr. and Mrs. Arason would separately qualify as a POSITA at the time of the invention under Mr. Kemnitzer's definition:

> In my opinion, a person of ordinary skill in the art ("POSITA") at the time of the alleged invention (2005/2006) would have had a Bachelor's degree in industrial design (which I described above in more detail), a Bachelor's degree in mechanical engineering (or similar), or a Bachelor's degree in furniture design and at least one year experience in the reconfigurable furniture industry, ***or at least two years of experience designing reconfigurable furniture***.

5

December 20, 2018 Expert Report of Ronald Kemnitzer ("Kemnitzer Report") (Ex. C), ¶ 13 (emphasis added). An individual with two years of experience designing reconfigurable furniture, such as Mr. or Mrs. Arason, would qualify as a POSITA under either party's proposed definition. For this reason, the slight differences in the parties' proposed hypothetical POSITAs were not material and would not change the result of any claim construction, infringement analysis or invalidity analysis.

### 2. The POSITA proposed by Mr. Poulin is fundamentally different from that previously proposed by plaintiff.

A careful reading of Mr. Poulin's report reveals that Mr. Poulin's proposed POSITA is based on flawed facts regarding the backgrounds of the inventors. Mr. Poulin states in part:

> In my opinion, I disagree with Mr. Kemnitzer's conclusion in Paragraph 13 of his report that a person of ordinary skill in the art ("POSITA") at the time of the invention (2005) would have had a Bachelor's degree in industrial design, furniture design, mechanical engineering or at least one year in the reconfigurable furniture industry *or two years of experience designing reconfigurable furniture*.
> 
> Woodworking and furniture making are widely practiced by hobbyists without such qualifications and have been for generations. ***It is further my understanding that neither of the inventors of the '758 patent have such credential or experience.***

Poulin Report, pp. 4-5 (emphasis added).

Mr. Poulin's factual understanding is erroneous. As discussed above, the inventors had more than two years of experience designing reconfigurable furniture at the time of the alleged invention in 2005/2006. Therefore, Mr. Poulin's opinions were not based on sufficient facts and data as required by Fed. R. Civ. P. 702.

In any event, Mr. Poulin went far beyond simply requiring a POSITA to be no more skilled than the inventors—Mr. Poulin's definition requires the POSITA to have **less** skill, ability and experience than the inventors. Mr. Poulin's version of a POSITA is an ordinary consumer of

6

beds having no education, no technical background, no substantial "creativity," "spatial reasoning," or "mechanical aptitude" and no experience in the furniture industry whatsoever:

> Q. Now, your definition of a POSITA, do I understand it to be the paragraph that starts with "It is my opinion that the proper POSITA at the time of the invention would be a consumer of beds" on page 5 of Exhibit 26?
>
> A. Yes, that is correct.
>
> Q. It can't be any consumer of beds, can it?
>
> A. Yes, it can.
>
> Q. ***My 5-year old daughter is in the market for a bed. Can it be her?***
>
> A. ***Yes, it can***.

Poulin Depo. at 30:4-14 (emphasis added).

> Q. And those are all based on the notion that the POSITA could be theoretically a 5-year old?
>
> A. Could be.
>
> Q. A 5-year old with no mathematics training --
>
> A. We can't -- I'm sorry.
>
> Q. -- no understanding of force other than, "If I step on this and it breaks, it doesn't work"?
>
> A. Is there a question in this?
>
> Q. Yes. That's the end of my question.
>
> A. Your question is?
>
> Q. I'm defining the 5-year old in this case. So a 5-year old with no mathematics training --
>
> A. Yes.
>
> Q. -- no physics training, no really even practical training other than, "If I step on this and it breaks, it doesn't work."
>
> MR. WELLING: Objection.
>
> A. So that could be a 5-year old, yes.
>
> Q. Could that person be a POSITA?
>
> A. Yes.

7

Poulin Depo. at 107:18-109:4.[3]

Mr. Poulin's POSITA—a user of beds with no training, skills, mechanical aptitude or experience in designing furniture—is materially and fundamentally different from the POSITA defined in plaintiff's response to Interrogatory No. 1.

Rule 37(c) of the Federal Rules of Civil Procedure states, in part:

> (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e) [supplementing discovery responses], the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Here, plaintiff responded to Interrogatory No. 1 on May 2, 2017, plaintiff never supplemented this response. The parties proceeded through claim construction, fact discovery, final infringement and invalidity contentions, both of CabinetBed's expert reports, and apparently even Mr. Slattery's expert report, all based on this response. Indeed, claim construction and obviousness analyses depend on having a proper POSITA definition. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (claims construed to have the meaning to "a person of ordinary skill in the art [POSITA] in question at the time of the invention"); 35 U.S.C. § 103 (claim is invalid if it "would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art [POSITA]."

Plaintiff's response to Interrogatory No. 1 defining a POSITA was not materially different from CabinetBed's definition, and CabinetBed relied on plaintiff's response and definition throughout the entire case. Only now, after claim construction, invalidity contentions, and expert reports are done, does plaintiff seek to fundamentally change the definition of a

---

[3] Notably, the hyper technical meanings Mr. Slattery attributed to undefined claim terms could not possibly be considered the "ordinary meanings" of those terms to a mere "user" of beds, much less a young child.

8

POSITA without having supplemented. Given the advanced stage of the case and the extensive prior activity, including the Court's claim construction, done under the original definition, plaintiff should be precluded from offering any new definition or opinions based thereon. This includes the opinions in Sections V(1), V(3) and VI of the Poulin Report.

### 3. Mr. Poulin did not analyze a POSITA under the proper framework.

Mr. Poulin, like Mr. Slattery, did not understand the proper application of principles to the facts of this case, and his testimony confirmed that he does not understand the proper framework for identifying a POSITA. The Court should strike sections V(1), V(3) and VI of the Poulin Report and proposed related testimony in their entireties for these additional reasons.

The question of how to define a POSITA was resolved decades ago. A POSITA is a hypothetical person who is presumed to be aware of all the pertinent prior art. *Standard Oil Co. v. American Cyanamid Co.,* 774 F.2d 448, 454, 227 USPQ 293, 297 (Fed. Cir. 1985). Notably, ***the actual inventor's skill is not determinative***. *Id*. (emphasis added). Factors that may be considered in determining level of skill include: type of problems encountered in art; prior art solutions to those problems; rapidity with which innovations are made; sophistication of the technology; and educational level of active workers in the field. *Custom Accessories, Inc. v. Jeffrey-Allan Industries, Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986); *see also In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995). Not all such factors may be present in every case, and one or more of them may predominate. *Id*.

Sometimes, the difference between the level of ordinary skill in the art and a lesser or greater level of skill can be the difference between validity and invalidity. *See, e.g.*, *Daiichi Sankyo Co., Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1257 (Fed. Cir. 2007) (reversing district court determination of non-obviousness because person of ordinary skill in the art was of a higher

level of skill than that assumed by the district court). The Court should prevent plaintiff from redefining the inquiry at the eleventh hour.

Here, in direct contravention of *American Standard*, Mr. Poulin focused only on what he incorrectly believed to be the inventors' backgrounds and experience:

> Q. … I'm struggling because it appears to me you've defined POSITA based on two individuals and not in the industry as a whole. Would you agree with that statement?
>
> A. Yes.

Poulin Depo. at 46:15-19.

> Q. In defining POSITA, you did not consider the typical skills and experience of a person practicing in the field of furniture design, did you?
>
> A. I considered those skills, but I did not consider these POSITA to be those people.
>
> Q. Why?
>
> A. Because if the man was a hobbyist and doing this on the side, I can't assume he understands the furniture business.
>
> Q. So as you understand POSITA, it's a hypothetical person who is the inventor?
>
> A. Yes.
>
> Q. Not a hypothetical person practicing in the industry?
>
> MR. WELLING: Objection.
>
> A. Yes.

Poulin Depo. at 47:3-19.

> Q. So you're not basing the POSITA on your understanding of the technology disclosed in the patent? You're basing it on your understanding of the individual inventors?
>
> A. I am.

Poulin Depo. at 110:10-14.

Mr. Poulin also confirmed that he had no opinion as to whether claim 1 would be valid if the proper POSITA is consistent with Mr. Kemnitzer's definition:

10

> Q. Mr. Polin, we talked at length about your opinions regarding the POSITA in this case. As of today, you have not provided any alternative opinion in the event the court disagrees with you regarding your definition of POSITA, have you?
>
> A   No.
>
> Q   And you have not considered whether claim 1 would be valid as argued by Mr. Kemnitzer if the level of skill in the art is as Mr. Kemnitzer understands it?
>
> A.   No.

Poulin Depo. at 116:25-117:11.

Mr. Poulin's testimony confirmed that he does not understand the proper framework for defining a POSITA. The Court should exclude all opinions resulting from Mr. Poulin's flawed methodology, including Mr. Poulin's opinions set forth in Sections V(1), V(3) and VI of the Poulin Report and related proposed testimony. Mr. Poulin also should be precluded from offering any new opinions on the subject.

    **B.**    **Mr. Poulin's Conclusory Opinions Regarding Priority And The Prior Art Status Of References Should Be Struck**

Mr. Poulin's report fails to "provide the bases or reasons" for his opinions regarding priority as required by Fed. R. Civ. P. 26(a)(2). Instead, the Poulin Report reveals a "conclusory approach that cannot reasonably be assessed for reliability" and should be struck. *U.S. v. Crabbe*, 556 F.Supp.2d 1217, 1222 (D. Colo. 2008) (citing *Daubert,* 509 U.S. at 593–94; *Kumho Tire,* 526 U.S. at 149–50.) The entirety of Mr. Poulin's opinion regarding priority of claim 1 is as follows:

> It is my opinion that the '170 Provisional does provide a sufficient disclosure for the necessary claim limitations of claim 1, namely, the "at least one support piece provided on an underside of said top piece between two spaced-apart pieces, said support piece being sized and configured to prop up said top piece."
> Accordingly, it is my opinion that the '758 patent should be afforded a priority date of April 11, 2005.

11

Poulin Report, pp. 6-7. An expert must do more than merely list elements and then conclude with a stock phrase on the ultimate issue. *Innogenetics, N.V.*, 512 F.3d at 1373; *see also Kumho*, 526 U.S. at 157.

It would be difficult to make Mr. Poulin's opinion any more conclusory. There is simply no explanation for how or why Mr. Poulin reached his conclusion—which is clearly wrong—regarding the sufficiency of provisional patent's disclosure. Indeed, Mr. Poulin did not deny this fact:

> Q. Now, I believe we just established that nowhere in your opinion, Exhibit 26, do you explain where this element we're referring to exists in the provision[al], correct?
>
> A. Correct.

Poulin Depo. at 39:4-14.

Nonetheless, Mr. Poulin was provided an opportunity during his deposition to explain himself. In doing so, Mr. Poulin demonstrated a complete lack of understanding of patent claims and how they relate to a patent's disclosure. Mr. Poulin's related testimony and the figure (from the '170 provisional patent application) discussed therein are provided below:



| | | |
|---|---|---|
| Q. | | … So the two spaced-apart sidepieces of the base are the elements that are marked underneath elements 21 and 22, right? |

MR. WELLING: Objection.

| | | |
|---|---|---|
| A. | | I think those pieces can be construed as 22 and 21 or 50. |
| Q. | | The two spaced-apart sidepieces can be elements 50? |
| A. | | I believe so. |
| Q. | | And you think elements 50 could also be the claimed "at least one support piece provided on an underside of said top piece between said two spaced-apart sidepieces"? |

MR. WELLING: Objection.

| | | |
|---|---|---|
| A. | | I do believe so. |
| Q. | | And elements 50 can also be the telescoping rails? |
| A. | | That is correct. |
| Q. | | So these elements 50 can be considered to be simultaneously three different elements of claim 1? |

MR. WELLING: Objection.

| | | |
|---|---|---|
| A. | | That is a possibility. |
| Q. | | And that's how you understand the claim? |
| A. | | As it appears, I do understand it appears that 22 and 21 as well as at least one of the 50 pieces could be construed as such. |
| Q. | | And it was based on that understanding that you formed your opinion regarding the priority claim of the 758 patent? |

MR. WELLING: Objection.

| | | |
|---|---|---|
| A. | | That is some of the information that I based it on, yes. |
| Q. | | Based on that, your understanding of claim 1 as you just described? |
| A. | | Yes. |

Poulin Depo. at 41:25-43:9.

A fundamental principle of claim interpretation is that "[w]here a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention." *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010). Clearly, the elements 50 from the '170 provisional patent application cannot simultaneously be the claimed "telescoping rails," "spaced

apart sidepieces" and "support piece … sized and configured to prop up said top piece." Any purported expert capable of opining on patent infringement or validity should understand that the elements 50 are the telescoping rails and there is no disclosure in the provisional application of a "support piece … sized and configured to prop up said top piece."

Mr. Poulin's opinions and proposed testimony regarding the priority of claim 1 are wholly conclusory and based on legal misconceptions. The Court should strike Mr. Poulin's related opinions proposed testimony.

Moreover, the Court should not permit plaintiff or Mr. Poulin to offer testimony regarding whether a reference is "prior art" to the '758 patent. It either is or it is not prior art, based on the filing date, publication date, priority date, etc. The status of reference as prior art is not a question for which opinion testimony is necessary or appropriate, nor is it a question for a jury. And, as Mr. Poulin established during his deposition, he is not even familiar with the various subsections of provisions of 35 U.S.C. § 102 that govern the determination of prior art.

Accordingly, the Court should strike the entirety of Mr. Poulin's opinions set forth in Section V(2) and related proposed testimony.

      **C.**    **Mr. Poulin's Conclusions Are Indefensible And Would Confuse A Jury**

Finally, to the extent Mr. Poulin's testimony might have any probative value, any such value would be outweighed by the confusion Mr. Poulin's testimony is likely to cause a jury.

## IV. CONCLUSION AND CERTIFICATION

For the foregoing reasons, CabinetBed respectfully submits that Mr. Poulin should be precluded from providing any opinion testimony at trial.

In accordance with D.C.COLO.LCivR 7.1(a), CabinetBed has conferred with plaintiff by phone regarding CabinetBed's motion. Plaintiff has advised CabinetBed that it opposes the motion and the requested relief.

Dated: <u>February 25, 2019</u>

Respectfully submitted,

/s/ *Mark C. Johnson*
Mark C. Johnson
mjohnson@rennerotto.com
Kyle B. Fleming
kfleming@rennerotto.com
Renner Otto
1621 Euclid Avenue, Floor 19
Cleveland, Ohio 44115
T: 216-621-1113
F: 216-621-6165

*Counsel for CabinetBed Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2019, a copy of the foregoing is being filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system.

/s/ *Mark C. Johnson*
*Counsel for CabinetBed Inc.*