IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-03001-PAB-NRN

ARASON ENTERPRISES, INC.,

     Plaintiff,

v.

CABINETBED INC.,

     Defendant.

---

**ORDER**

---

     This matter is before the Court on Defendant CabinetBed Inc.'s Motion to Exclude Testimony of Adrian Slattery on Alleged Infringement [Docket No. 62] and Defendant CabinetBed Inc.'s Motion to Exclude Testimony of René Poulin [sic] on Alleged Invalidity [Docket No. 63]. Plaintiff filed a response to both motions [Docket Nos. 73, 74], to which defendant replied. Docket Nos. 76, 77.

## I. BACKGROUND

     Plaintiff Arason Enterprises, Inc. asserts claims of patent infringement against defendant CabinetBed Inc. related to defendant's sale of Murphy-style "cabinet beds" wherein a folded mattress is contained inside a chest-shaped piece furniture and can be deployed as a bed. Docket No. 5 at 2, ¶ 6, at 4, ¶ 24; *see generally id.* at 6-7. Plaintiff is the assignee of United States Patent No. 7,574,785 ("the '758 patent"), a utility patent entitled "FOLDING CABINET BED WITH TELESCOPING SLIDE-OUT SUPPORT PLATFORM." Docket No. 75 at 4, ¶ 14. The invention's structure is described as a "folding cabinet bed [that] includes a cabinet of sufficient size to enclose

a standard size folded futon mattress, and allows the mattress to be deployed as a bed." Docket No. 40-2 at 1. The cabinet structure contains a drawer that extends via telescoping rails. '758 Patent at col. 5, ll. 26-32. When the telescoping rails are extended, the extendable structure provides support for the sleeping platform, which is formed from the front wall of the cabinet, an extension panel, and the mattress contained in the cabinet. *Id.*, ll. 36-53.



Figure 5

'758 patent, Fig. 5. Plaintiff alleges that defendant has infringed upon claim 1 of the '758 patent. Docket No. 75 at 4, ¶ 16. Claim 1 is directed to, among other things, "[a] folding cabinet bed system, comprising[] a cabinet assembly, comprising[] [an] extendable structure [that] supports said front wall and said extension panel when said front wall and said extension panel are in the open position." '758 patent, claim 1, ll.

2

7:49-51, 8:35-37.  Specifically, plaintiff alleges that defendant's "Stanley" cabinet bed infringes upon the '758 patent:



Docket No. 1-2 at 6.  The accused invention also has an extendable drawer at the bottom of its structure, but this drawer does not extend the full length of the extension panel, which reaches approximately fifty-five inches.  Docket No. 62-1 at 12, ll. 22-24. Instead, this drawer extends eighteen inches.  *Id.*, ll. 20-21.

This Court issued a claim construction order on September 30, 2018 in which the Court construed the parties' disputed claim terms.  Docket No. 54.  Defendant has now filed motions to exclude the opinions of two of plaintiff's expert witnesses.  Docket Nos. 62, 63.

## II.  LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that:

A witness who is qualified as an expert by knowledge, skill, experience,

training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area.  Rather, the Court must "perform[] a two-step analysis."  *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  After determining whether the expert is qualified, the proffered opinions must be assessed for reliability.  *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

Rule 702 imposes on the district court a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)).  To perform that function, the Court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts."  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93).  Where an expert witness relies on experience, the expert "'must explain how that experience leads to the conclusion reached, why that

4

experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'"  *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes).  When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for cosmic understanding but for the particularized resolution of legal disputes." *Daubert*, 509 U.S. at 597.  It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

In addition to the witness having appropriate qualifications and methods, the proponent of the witness' opinions must demonstrate that the process by which the witness derived his or her opinions is reliable.  *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008).  "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.*

While the proponent of the challenged testimony has the burden of establishing admissibility, the proffer is tested against the standard of reliability, not correctness, *see Allstate Sweeping, LLC v. City & Cty. of Denver*, No. 10-cv-00290-WJM-MJW, 2011 WL 2173997, at *3 (D. Colo. June 2, 2011); the proponent need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were

used and that the methodology was otherwise reliably applied." *Crabbe*, 556 F. Supp. 2d at 1221.

Assuming the standard for reliability is met, the Court must also ensure that the proffered testimony will assist the trier of fact. *See Kumho Tire*, 526 U.S. at 156; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006). "Relevant expert testimony must logically advance[] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (internal quotation marks and citations omitted). In assessing whether expert testimony will assist the trier of fact, the Court should also consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Id.* at 476-77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

## III. ANALYSIS[1]

### A. Adrian Slattery

Defendant seeks to exclude two opinions in Mr. Slattery's expert report. First, it seeks to exclude Mr. Slattery's opinion "that Cabinetbed's 'Standard' cabinet bed infringes on at least Claim 1 of the '758 patent." Docket No. 61-1 at 3, ¶ 10. Second, it seeks to exclude Mr. Slattery's opinions "set forth . . . on pages 21 and 36-38 of [his] accompanying chart." Docket No. 62 at 2. On these pages, Mr. Slattery opines (1) that the accused structure contains a "support piece" that is "configured to prop up the top

---

[1]Admissibility of expert testimony in a patent suit is governed by the law of the regional circuit in which the district court resides. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390-91 (Fed. Cir. 2003).

piece," Docket No. 61-1 at 28; (2) that the accused structure has an extendable structure that "supports the opened front wall and opened extension panel," *id.* at 43; and (3) that the accused structure contains "telescoping rails" that are "sized and configured to accommodate the size of the front wall and extension panel." *Id.* at 44-45. Essentially, these three opinions provide one of the bases for Mr. Slattery's opinion that the accused structure infringes upon claim 1 of the '758 patent.

### 1. *Opinion on infringement*

Defendant argues that Mr. Slattery's infringement opinion should be excluded because "he does not understand the framework for performing a proper infringement analysis." Docket No. 62 at 6; *see also id.* at 4 ("Mr. Slattery has no understanding of literal infringement."). Defendant does not challenge Mr. Slattery's qualifications to testify as an expert. *See* Docket No. 76 at 8. The fact that Mr. Slattery is not a patent lawyer does not disqualify him from offering an opinion on infringement. *See Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997) (rejecting notion that "only lawyers or patent lawyers can be expert witness[es] in a patent suit"); *see also* Robert A. Matthews, Jr., 7 Annotated Patent Digest § 44:70 (June 2019) ("Technical experts showing they have the necessary technical knowledge of the subject matter covered by the patent at issue to be qualified to render opinion testimony are permitted to testify as to the issue of infringement. Such experts must know the technology, but need not know in detail patent law.").

Defendant argues that the methodology from which Mr. Slattery drew his infringement opinion is flawed because he did not perform a proper infringement

analysis.  Specifically, defendant challenges the fact that Mr. Slattery did not review the

Court's *Markman* order [Docket No. 54] and did not consider the '758 patent's

specification in forming his opinion that the accused product infringes the '758 patent.

Docket No. 62 at 4-5.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005)

(quoting *Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 217 (1940) ("The

claims of a patent are always to be read or interpreted in the light of its specifications.");

*see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009)

("No party may contradict the court's claim construction to a jury.").  Plaintiff counters

that Mr. Slattery followed proper principles and methodology in forming his infringement

opinion because he "took the claim as construed by the Court and analyzed the

construed limitations vis-á-vis the Accused Instrumentality," and considered several

other sources in forming his opinion, as set out in his expert report.  Docket No. 73 at 7-

8.  Specifically, Mr. Slattery's report states that, in preparation of his report, he

(1) "spoke[] with Plaintiff's counsel"; (2) "reviewed the Plaintiff's Complaint";

(3) "reviewed the Defendant's Answer"; (4) "reviewed written discovery from the

lawsuit"; (5) "reviewed the Plaintiff's Final Infringement Contentions"; and (6) "examined

Cabinetbed's 'Standard' cabinet bed."  Docket No. 61-1 at 1-2, ¶ 5.  Further, although

Mr. Slattery testified at his deposition that he did not read the Court's claim construction

order, he also stated that he received from plaintiff's counsel the constructions set out

in the order and used those definitions in forming his infringement opinion.  Docket No.

62-1 at 6, ll. 8-16.

   Despite defendant's argument that Mr. Slattery used a "flawed methodology" in

forming his opinions, the Court finds that its argument actually goes towards whether

Mr. Slattery relied upon sufficient facts and data.  *See* Docket No. 62 at 4-5 (arguing

that Mr. Slattery did not perform a proper infringement analysis because he did not

review the claim construction order or the patent's disclosure in forming his infringement

opinion).  Neither party sets forth an argument as to what it considers a "proper

infringement analysis" with regard to the requisite facts and data sufficient to support to

a finding of infringement.

The Court finds, however, that Mr. Slattery relied upon sufficient facts and data

in supporting his opinions.  He reviewed the complaint and the answer and was aware

of plaintiff's infringement contentions and defendant's response thereto.  He also

examined the accused structure in person, which included deconstructing and

rebuilding the device as well as building "a 3-D model" of the accused device.  Docket

No. 73 at 7.  And although Mr. Slattery did not read the Court's claim construction order

in full, he was given the Court's claim constructions by plaintiff's counsel and he used

those definitions in forming his opinion.  Docket No. 62-1 at 6, ll. 12-14.  Indeed,

although the failure to read the Court's *Markman* order deprived Mr. Slattery of

important context in utilizing the Court's claim constructions, defendant has not

articulated why this lack of context renders Mr. Slattery's testimony inadmissible.  The

Court finds that, as a whole, Mr. Slattery relied upon sufficient facts and data to form his

opinion on infringement.  *See LTJ Enterprises, Inc. v. Custom Marketing Co., LLC*, 168

F. Supp. 3d 1202, 1209 (D. Minn. 2016) (finding that an expert who had examined the

accused device, the patented device, the patent, and the court's claim construction

order had "examined the items most germane to forming an infringement opinion in

[the] case" and thus his opinion was based on sufficient facts and data); *see also Inline*

9

*Connection Corp. v. AOL Time Warner Inc.*, 472 F. Supp. 2d 604, 612 (D. Del. 2007)

(rejecting argument that expert's report was not supported by sufficient facts and data

when expert had read the patents and prosecution histories, the court's claim

construction order, the declarations of opposing experts, and other literature, and had

relied on his knowledge in the field in forming his opinions).  Mr. Slattery's opinion on

infringement will not be excluded.

### 2. Opinions regarding specific portions of the accused structure

Defendant also seeks to exclude "opinions set forth . . . on pages 21 and 36-38

of [Mr. Slattery's] accompanying chart."  Docket No. 62 at 2; *see also* Docket No. 61-1

at 8 (Mr. Slattery's "accompanying chart").  In these pages, Mr. Slattery consistently

describes a portion of the accused structure as a "support piece" that is "configured to

prop up the top piece."  Docket No. 61-1 at 28.  He also describes the accused

structure's extendable drawer as having "telescoping rails [that] are sized and

configured to accommodate the size of the front wall and extension panel" and opines

that the drawer "supports the opened front wall and opened extension panel."  *Id.* at 43-

45.  Mr. Slattery then provides an overall opinion of infringement in claim 1 of the '758

patent, as claim 1 describes a folding cabinet bed comprised of, among other things, "at

least one support piece provided on an underside of said top piece . . . said support

piece being sized and configured to prop up said top piece."  '758 patent, claim 1, ll.

8:6-9.

Defendant seeks to exclude these opinions on the basis that they are "based on

untenable new constructions of undefined terms."  Docket No. 62 at 6.  In this

document, defendant contends that Mr. Slattery's opinions propose new definitions of

the terms "support," "prop up," and "accommodate the size of the front wall and the extension panel" that are not within the terms' plain and ordinary meaning. *Id.* at 6-7.

None of these discrete terms were construed in the Court's *Markman* order, as neither party requested constructions for them. *See* Docket No. 54. The Court did, however, construe the phrase "support piece . . . sized and configured to prop up said top piece" to mean a "support piece that is independent of the sidepieces . . . sized and configured to prop up said top piece." *Id.* at 17-18.

To understand defendant's argument, an examination of Mr. Slattery's infringement chart and the infringement opinions therein [Docket No. 61-1] is required. Specifically, Mr. Slattery states that "[t]here is a support piece on the underside of the top piece . . . [that] is configured to **prop up** the top piece," Docket No. 61-1 at 28 (emphasis added), that "[t]he extendable structure [in the accused product] **supports** the opened front wall and opened extension panel," Docket No. 61-1 at 43 (emphasis added), and that "[t]he telescoping rails are sized and configured to **accommodate the size of the front wall and extension panel**." *Id.* at 44, 45 (emphasis added).



*Id.* at 44-45 (depicting Mr. Slattery's contention that the extendable drawer "supports" the opened front wall and extension panel).

Defendant argues that Mr. Slattery has provided his own definitions to the terms "support," "prop up," and "accommodate the size of the front wall and the extension panel" because, according to defendant, Mr. Slattery's use of these terms is untenable in light of the actual product. Docket No. 62 at 8-9. More specifically, defendant argues that "[t]he bed must be functional in order for there to be 'support' for the 'front wall and said extension panel.'" Docket No. 62 at 9. In other words, defendant argues that, if the terms in question have the meaning that Mr. Slattery purports to assign to them – i.e., if the front wall and extension panel in the accused structure are supported by the extendable drawer, and only the drawer – the bed would break. *See id.* at 9-10. Mr. Slattery confirmed in his deposition that, if the drawer is the only support for the extension panel, the bed would, in fact, break. Docket No. 62-1 at 17, 68:1-4. According to defendant, because the extendable drawer necessarily cannot be the only support piece if the bed is to remain functional, Mr. Slattery's opinion is wrong and must be excluded.

"[I]t is improper to argue claim construction to the jury because the 'risk of confusing the jury is high when experts opine on claim construction.'" *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009) (quoting *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172-73 (Fed. Cir. 2005)). However, when a party "did not seek construction" of a claim term, the term is "given its ordinary and customary meaning . . . to a person of ordinary skill in the art in question at the time of

12

the invention." *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 733 F. Supp. 2d 517, 545 (D. Del. 2010) (quoting *Phillips*, 415 F.3d at 1313).  Accordingly, "parties may introduce evidence as to the plain and ordinary meaning of terms not construed by the Court to one skilled in the art," *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2014 WL 660857, at *3 (N.D. Cal. Feb. 20, 2014) (internal quotation and alteration marks omitted), so long as the parties do not "argue claim construction to the jury." *Cordis Corp.*, 561 F.3d at 1337.  Therefore, the Court rejects defendant's argument that Mr. Slattery is now trying to create new claim constructions in his expert report.

Moreover, there is no argument from defendant that Mr. Slattery is not speaking from the perspective of a person of ordinary skill in the art ("POSITA").[2]  Mr. Slattery stated during his deposition that he was interpreting the claims at issue using his "own understanding of the English language" "[a]s a person who [is] qualified to read those claims and relate them to the cabinet."  Docket No. 62-1 at 8, 43:4-8.  The Court finds that Mr. Slattery's opinions are proper evidence of the terms' plain and ordinary meaning to one skilled in the art.  Accordingly, Mr. Slattery's opinions need not be excluded.  *Apple, Inc.*, 2014 WL 660857, at *3.

The remainder of defendant's arguments go to the believability or correctness of Mr. Slattery's opinions.  "[T]he court's 'gatekeeping' responsibilities under Rule 702 do not turn on the 'correctness' of an expert's opinions." *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1055-56 (D. Colo. 2011); *see also Cook v. Rockwell*

---

[2]Defendant makes no argument that Mr. Slattery's opinions are inconsistent with how a POSITA would have construed the terms at the time of the invention.  *See* Docket No. 62.

*Int'l Corp.*, 580 F. Supp. 2d 1071, 1085 (D. Colo. 2006) (a proponent of an expert does not require proof that the expert is "indisputably correct" and expert testimony "can be 'shaky' and yet still admissible").  Any argument that Mr. Slattery's definitions of the terms in question would render the bed not functional is an argument on the merits and is not a basis to exclude Mr. Slattery's opinions.  It is not the Court's duty to judge the credibility of expert testimony when ruling on a motion to exclude.  "The Court does not determine the weight or persuasiveness of the opinion, nor consider other evidentiary objections which are more appropriately addressed at trial."  *Crabbe*, 556 F. Supp. 2d at 1220; *see also Daubert*, 509 U.S. at 595 ("The [court's] focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.").

The Federal Circuit has noted that the issue of infringement is "analyzed in great part from the perspective of a person of ordinary skill in the art, and testimony explaining the technical evidence from that perspective may be of great utility to the factfinder."  *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1361 (Fed. Cir. 2008); *see also Syntrix Biosystems, Inc. v. Illumina*, Inc., 2013 WL 593801, at *4 (W.D. Wash. Feb. 15, 2013) ("[W]hether specific embodiments or products characteristic of specific embodiments are encompassed within a claim limitation is relevant evidence.").  Mr. Slattery may testify as to his opinion regarding whether the accused structure is encompassed in claim 1 of the '758 patent, and defendant's motion to exclude the testimony of Mr. Slattery will be denied.

**B.   René Polin**

Defendant also seeks to exclude certain opinions offered by René Polin, another

technical design expert designated by plaintiff.  *See* Docket No. 63; Docket No. 63-1 at

3.  Defendant seeks to exclude Mr. Polin's opinions "set forth in Sections V(1), V(3), . . .

VI[,] [and] V(2)" of his report.  Docket No. 63 at 2-3.  Essentially, defendant seeks to

exclude the entire substance of Mr. Polin's report.  *See* Docket No. 70-19.

The Court construes defendant's motion to exclude opinions of Mr. Polin as

challenging (1) Mr. Polin's opinion as to what constitutes a POSITA, *see* Docket No. 70-

19 at 5-6; (2) Mr. Polin's opinion that claim 1 of the '758 patent is not rendered invalid or

obvious by the prior art, based upon what a POSITA would think, *see id.* at 8-10; (3) Mr.

Polin's opinion that claim 1 is not invalid as being obvious, *see id.* at 8; (4) Mr. Polin's

opinion that the '758 patent should be afforded a priority date of April 11, 2005, *see*

Docket No. 70-19 at 8.

### 1.  *Opinion on the proper definition of a POSITA*

Defendant argues that several of Mr. Polin's opinions must be excluded due to

what defendant believes to be a faulty interpretation of a POSITA in the field of furniture

making.  In its claim construction order, the Court found that the definition of a POSITA

had no impact on the outcome of the claim construction and declined to define who

would constitute a POSITA in this case.  Docket No. 54 at 11, n.2.  However, the Court

noted that the parties, at the time, did not dispute the appropriate level of skill in the art

in their claim construction arguments.  *Id.*

Defendant first argues that Mr. Polin's POSITA opinions should be excluded

because his POSITA definition is inconsistent with plaintiff's previously submitted

POSITA definition.  Docket No. 63 at 6.  In defendant's first set of interrogatories, it

asked plaintiff to "[d]escribe the level of ordinary skill in the art, including without limitation the educational background and/or experience level, that Plaintiff contends is applicable for purposes of claim construction for the Patent-In-Suit or for any other purpose in this action. . . ." Docket No. 63-2 at 1. Plaintiff's responded:

> the inventors of the '139 and '758 patents combined have undergraduate and graduate degrees, moderate-to-advanced woodworking skills, creativity, spatial reasoning, mechanical aptitude, public relations, marketing, and strong interpersonal and communication skills, all of which were relevant to their conception of the inventions. Plaintiff contends that similar background and experience would be relevant for one construing claims of the '139 or '758 patents, or to one applying the doctrine of equivalents to the '139 or '758 patents.

Docket No. 63-2 at 1-2.

Mr. Polin has a different conception of a POSITA. He contends that "the proper POSITA at the time of the invention would be a consumer of beds . . . or a woodworking hobbyist." Docket No. 70-19 at 6. In his deposition, when asked, he stated that his definition of a POSITA could theoretically include a five-year-old child:

> DEFENSE COUNSEL: Now, your definition of a POSITA, do I understand it to be the paragraph that starts with "it is my opinion that the proper POSITA at the time of the invention would be a consumer of beds" on page five of Exhibit 26?
>
> MR. POLIN: Yes, that is correct.
>
> DEFENSE COUNSEL: It can't be any consumer of beds, can it?
>
> MR. POLIN: Yes, it can.
>
> DEFENSE COUNSEL: My five-year-old daughter is in the market for a bed. Can it be her?
>
> MR. POLIN: Yes, it can.

Docket No. 63-4 at 3, 30:4-14; *see also id.* at 10-11, 108:9-109:4 (Mr. Polin stating that

a POSITA could be a five-year-old with no mathematics training).  He also stated that

he had formulated his interpretation of a POSITA "based on two individuals [the

inventors of the Arason product] and not in the industry as a whole."  Docket No. 63-4

at 8, 46:14-19; *see also id.* at 11, 109:11 (Mr. Polin stating that "the POSITA is the

inventor").  Plaintiff contends that, regardless of whether there are inconsistencies, "this

should not result in the exclusion of Mr. Polin's testimony" because "[t]his would be

something that would be ripe for cross-exam at trial."  Docket No. 74 at 6.

Defendant additionally argues that Mr. Polin's POSITA opinions should be

excluded because he did not analyze the definition of a POSITA "under the proper

framework."  Docket No. 63 at 9.  There is a generally understood framework for

determining a person of the ordinary skill in the art.  A POSITA "is a theoretical

construct.  It is a person who is presumed to be aware of all the pertinent prior art and

who possesses all the skills, experience, and education commensurate with the

sophistication of the particular technology."  *Mud Buddy, LLC v. Gator Tail, LLC*, 2012

WL 2595061, at *2 (D. Utah July 5, 2012).  *See also* Patent Law, Legal and Economic

Principles § 5.8 (2d ed.) (stating that a POSITA "is a designer of products or processes

who is familiar with the prior art, the demands known to the design community or

present in the marketplace, and possessing the background knowledge of an ordinary

designer. . . . Such a person is more skilled in the pertinent art than a layman and less

skilled than persons of extraordinary skill in the pertinent art.").  Further, a POSITA must

be determined by looking at the field as a whole, rather than just the inventor of the

patented device.  "The actual inventor's skill is irrelevant to the inquiry."  *Standard Oil

Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985).

The Court finds that Mr. Polin's opinions regarding the definition of a POSITA should be excluded. First, the Court finds that the substantial disparity between plaintiff's interrogatory response regarding the definition of a POSITA and the definition it now seeks to introduce via Mr. Polin's testimony is grounds for exclusion. Rule 37(c) of the Federal Rules of Civil Procedure provides that, "[i]f a party fails to provide information . . . as required by [Rule 26(e)],[3] the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

"The determination of whether a Rule 26[] violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (internal quotation omitted). While "[a] district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose, . . . the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the [non-disclosing] party's bad faith or willfulness." *Id.*

First, the Court finds that the prejudice or surprise to defendant is high, and plaintiff's ability to cure the prejudice is low. The determination of what constitutes a

_____

[3]"A party who has . . . responded to an interrogatory . . . must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

POSITA is an important factor in patent litigation. *See Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1361 (Fed. Cir. 2008) (issues of infringement and validity "are analyzed in great part from the perspective of a person of ordinary skill in the art"); *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420 (2007) (obviousness analysis is performed through perspective of POSITA). Defendant states that it has "relied on plaintiff's [interrogatory] response and [POSITA] definition throughout the entire case," Docket No. 63 at 8, which indicates that defendant will likely be prejudiced should plaintiff be permitted to introduce this new definition at this late stage in the litigation. *Cf. Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1382 (Fed. Cir. 2013) (affirming district court decision that expert's failure to disclose his testing methodology was not substantially justified or harmless where opposing party had relied upon inaccurate expert report). Further, Mr. Polin's expert report was served on January 21, 2019, *see* Docket No. 63-1 at 1, just three days before the rebuttal expert report deadline, *see* Docket No. 57, giving defendant essentially no time to prepare a rebuttal to Mr. Polin's POSITA opinion. The Court finds that defendant was prejudiced by the inclusion of this new definition of POSITA in Mr. Polin's expert report.

In addition, because this litigation is currently in its advanced stages – the deadlines for fact discovery, expert reports and expert discovery, and dispositive motions have passed, *see* Docket No. 57 – the Court finds that there is no meaningful way for the parties to cure this prejudice. *See Gustafson v. Am. Fam. Mut. Ins. Co.*, No. 11-cv-01303-PAB-MEH, 2012 WL 5904048, at *5 (D. Colo. Nov. 26, 2012) ("The Court

also finds that [defendant] cannot cure its failure to disclose the scope of [the expert's] proffered testimony because such a cure would require re-opening discovery."). Moreover, any attempt at additional discovery could disrupt the January trial. While there is no evidence of bad faith or willfulness on the part of plaintiff, the Court finds that the potential prejudice to defendant resulting from Mr. Polin's POSITA testimony is sufficient to find that plaintiff's failure to supplement was not substantially justified or harmless. As a result, Mr. Polin's opinion regarding the definition of a POSITA will be excluded.

Moreover, while Mr. Polin provides little insight into what methodology and considerations he took in forming his POSITA opinion, it is clear that Mr. Polin did not consider the widely accepted standard in determining his definition of a POSITA for furniture construction. Beyond stating that he disagrees that a POSITA must have formal education or training in furniture design or engineering because "[w]oodworking and furniture making are widely practiced by hobbyists [without technical qualifications] and have been for generations," he provides no explanation for his conception of a POSITA. Docket No. 70-19 at 6. Mr. Polin's opinion is unsupported by any factual or analytical basis as to why "the proper POSITA at the time of the invention would be a consumer of beds," and could include a five-year-old child. Docket No. 70-19 at 6. Simply put, Mr. Polin does not indicate he relied upon sufficient facts or data in forming his POSITA definition or indicate that he followed the generally accepted conception of what a POSITA construction requires. Thus, the Court finds that Mr. Polin did not rely upon a proper methodology in forming his POSITA opinions. *See Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1205 (10th Cir. 2002) (quoting *General Elec. Co. v.*

*Joiner*, 522 U.S. 136, 147 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

Thus, the Court will exclude Mr. Polin's opinions as to (1) what constitutes a POSITA in the field of furniture invention and building to the extent it is inconsistent with plaintiff's interrogatory answer on the subject;[4] and (2) his opinions as to whether certain patents would have been obvious to a POSITA, *see* Docket No. 70-19 at 8, ¶ a, *id.* at 9, ¶ c; *id.* at 11.

### 2. *Opinions as to obviousness*

Mr. Polin offers opinions as to the obviousness of the '758 patent, both from what he believes to be the perspective of a POSITA and from his own perspective. Specifically, he states that "[i]t would not have been obvious to a POSITA to combine the '139 folding bed with certain features of the '603 patent," Docket No. 70-19 at 8, ¶ a, and that it "would not have been obvious to a POSITA to combine the '139 folding bed with certain features of the '329 patent." *Id.* at 9, ¶ c. Given the Court's determination that Mr. Polin's opinions regarding what constitutes a POSITA must be excluded for lack of proper methodology, the Court will also exclude Mr. Polin's opinions regarding what he believes a POSITA would find obvious.

In addition, Mr. Polin offers opinions from his own perspective regarding obviousness. *See, e.g.,* Docket No. 70-19 at 8-9, ¶ 3(a) (stating that "It is my opinion

---

[4]The Court will not exclude Mr. Polin's opinion that a POSITA need not have formal education or training, as this opinion does not contradict the well-established guidelines for determining a POSITA.

that Claim 1 of the '758 Patent is not obvious over the '139 Patent in combination with the '603 Patent."); *see also id.*, ¶¶ 3(b)-(g).  Mr. Polin states his conclusions, e.g., that claim 1 of the '758 patent is not obvious, but provides no factual or analytical support for those opinions.  Rule 702 requires that expert testimony be "based on sufficient facts or data."  Fed. R. Evid. 702(b).  As stated above, a district court is not required to admit opinion evidence that is based solely on the *ipse dixit* of the expert.  *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1218 (10th Cir. 2016).  The Court finds that Mr. Polin's obviousness opinions lack a sufficient basis to satisfy the requirements of Rule 702 and will be excluded.  *See Sprint Commc'ns Co. L.P. v. Vonage Holdings Corp.*, 2007 WL 2572417, at *2 (D. Kan. Sept. 4, 2007) ("[A] conclusory statement devoid of factual or analytical support is insufficient to lay the proper foundation for the admission of [expert] testimony."); *Elder v. Tanner*, 205 F.R.D. 190, 193-94 (E.D. Tex. 2001) (striking opinions regarding infringement, anticipation, and obviousness that "state[d] the experts' ultimate opinions . . . and, generally, the authorities and evidence upon which they rely, but without any elaboration or reasoning.").

### 3.  *Opinion as to priority*

Defendant also argues that Mr. Polin's opinions regarding priority should be excluded on the basis that they are "conclusory."  Docket No. 63 at 11.  Plaintiff disagrees, stating that "[a]t most, the points raised by the Defendant could prove fertile ground for cross-exam at trial."  Docket No. 74 at 7.

Fed. R. Evid. 702(b) requires that expert testimony be "based on sufficient facts or data."  Mr. Polin asserts that it is his opinion that "the '170 Provisional [patent] . . .

provide[s] a sufficient disclosure for the necessary claim limitations of claim 1, namely, the 'at least one support piece provided on an underside of said top piece between two spaced-apart pieces, said support piece being sized and configured to prop up said top piece.'" Docket No. 70-19 at 7-8. Thus, it is Mr. Polin's opinion "that the '758 patent should be afforded a priority date of April 11, 2005." *Id.* at 8. He then states that "neither U.S. Patent No. 7,013,506 nor U.S. Patent Publication No. 2507329 should be considered as prior art references." *Id.*

The Court agrees that Mr. Polin does not adequately support his opinions concerning the priority date of the patent. He does not state why he believes that the '170 provisional patent provides a sufficient disclosure for the necessary claim limitations of claim 1 or point to a specific provision in the '170 provisional patent that he believes includes the claim limitations of claim 1. Indeed, he provides no analysis of the '170 patent whatsoever, admitting during his deposition that "nowhere in [his] opinion . . . [does he] explain where this element [he is] referring to exists." Docket No. 63-4 at 4, ll. 6-10. Plaintiff's response fails to identify any material in Mr. Polin's report or deposition that explains or supports his opinion. Instead, plaintiff admits that "[a] full reading of Mr. Polin's deposition transcript will lead to head scratching at several points," but argues that "[a]t most, the points raised by the Defendant could prove fertile ground for cross-exam at trial." Docket No. 74 at 7. Essentially, this is another opinion based solely on the *ipse dixit* of Mr. Polin, and it is inadmissible at trial. *See Graves*, 405 F. App'x at 299. Given Mr. Polin's failure to provide support for these opinions, and given plaintiff's absence of argument to the contrary, the Court will exclude Mr. Polin's opinions as to the proper priority date for the '758 patent.

23

For these reasons, it is

**ORDERED** that Defendant CabinetBed Inc.'s Motion to Exclude Testimony of Adrian Slattery on Alleged Infringement [Docket No. 62] is **DENIED**.  It is further

**ORDERED** that Defendant CabinetBed Inc's Motion to Exclude Testimony of René Poulin [sic] on Alleged Invalidity [Docket No. 63] is **GRANTED**.

DATED September 23, 2019.

BY THE COURT:

s/Philip A. Brimmer

PHILIP A. BRIMMER
Chief United States District Judge