IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-03001-PAB-NRN

ARASON ENTERPRISES, INC.,

    Plaintiff,

v.

CABINETBED INC.,

    Defendant.

# ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment and for Dismissal with Prejudice of All Claims Involving Either U.S. Patent No. 6,851,139 or CabinetBed's Premium Bed [Docket No. 70] and Plaintiff's Motion for Summary Judgment on Liability for Patent Infringement of Claim No. 1 of the '758 Patent [Docket No. 75]. The Court has jurisdiction under 28 U.S.C. § 1331.

## I. BACKGROUND[1]

On September 6, 2016, plaintiff Arason Enterprises, Inc. filed suit against defendant CabinetBed Inc. in the United States District Court for the Northern District of Ohio alleging patent infringement. Docket No. 5. On December 6, 2016, the case was transferred to the District of Colorado. Docket No. 1. Plaintiff claims that defendant has infringed its U.S. Patent No. 7,574,758 (issued Aug. 18, 2009) (the "'758 patent").[2]

---

[1]The following facts are undisputed unless otherwise noted.

[2]Plaintiff's complaint alleges infringement of U.S. Patent No. 6,851,139 (issued Feb. 8, 2005) (the "'139 patent"), but plaintiff abandoned these claims in its final

Docket No. 5 at 6. The patent relates to a so-called cabinet bed, wherein a folded mattress is contained inside a piece of furniture and can be deployed as a bed. *See* '758 patent, Abstract.

The '758 patent, entitled "FOLDING CABINET BED WITH TELESCOPING SLIDE-OUT SUPPORT PLATFORM," was issued on August 18, 2009 and claimed priority from U.S. Provisional Patent Application No. 60/670,170 ("the '170 provisional"). Docket No. 70 at 2, ¶ 1; Docket No. 75 at 4, ¶ 14. Plaintiff alleges that defendant's Standard Bed ("the accused bed") infringes upon Claim 1 of the '758 patent. Docket No. 75 at 4-5, ¶¶ 17, 22.



'758 patent, Fig. 5.

---

infringement contentions. Docket No. 75 at 4-5, ¶¶ 16, 22.

Defendant's accused bed contains a drawer at its base ("the extendable drawer") that extends approximately eighteen inches from the base. Docket No. 70 at 2-3, ¶ 5. The accused bed's front wall and accompanying extension panel extend from the base to form a sleeping platform that extends approximately fifty-five inches from the bed's base. *Id.*



Docket No. 61-1 at 44-45 (the accused bed with the Court's annotations).

Defendant has filed a motion for summary judgment, arguing that it is entitled to judgment on plaintiff's infringement claim on the basis that (1) defendant's accused bed does [not] infringe Claim 1, Docket No. 70 at 9; (2) Claim 1 is not entitled to priority from the '170 provisional, *id.* at 14; and (3) Claim 1 is invalid as obvious under 35 U.S.C. § 103, *id.* at 15. Plaintiff also filed a motion for summary judgment, in which it contends that the accused bed infringes Claim 1 of the '758 patent. Docket No. 75 at 11.

## II.  LEGAL STANDARD

The Federal Circuit reviews a district court's "grant or denial of summary judgment under the law of the regional circuit."  *Lexion Med., LLC v. Northgate Techs., Inc.*, 641 F.3d 1352, 1358 (Fed. Cir. 2011) (citing *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1349 (Fed. Cir. 2005)).  Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment*. Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."

*Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Id.* However, where, as here, there are cross motions for summary judgment, the reasonable inferences drawn from affidavits, attached exhibits, and depositions are rendered in the light most favorable to the non-prevailing party. *Jacklovich v. Simmons*, 392 F.3d 420, 425 (10th Cir. 2004). Furthermore, "[w]hen the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotation marks omitted).

### III. ANALYSIS

#### A. Direct Infringement

Plaintiff claims that the accused bed directly infringes Claim 1 of the '758 patent. Docket No. 60 at 3. Determining whether direct patent infringement has occurred "requires a two-step analysis[:] First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to

5

the accused device or process." *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1361 (Fed. Cir. 2007) (citations omitted). The Court has already construed the parties' disputed claim terms. *See* Docket No. 54. As to the second step in the infringement analysis, a plaintiff will succeed if it can "show that the accused device contains every limitation in the asserted claims." *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999). "If even one limitation is missing or not met as claimed, there is no literal infringement." *Id.*

Defendant argues that plaintiff cannot meet its burden of demonstrating direct or literal infringement of Claim 1 because several elements do not appear in the accused bed. Specifically, defendant contends that (1) the accused bed does not include an "extendable structure housed within said base assembly" wherein "said extendable structure supports said front wall and said extension panel when said front wall and said extension panel are in the open position," Docket No. 70 at 10; (2) the accused bed does not include a "plurality of telescoping rails" that are "sized and configured to accommodate the size of the front wall and the extension panel," *id.* at 11; (3) the accused bed does not include "at least one support piece . . . sized and configured to prop up said top piece," *id.* at 12; and (4) the accused bed does not include a "cabinet assembly" with "an open bottom" and a "base assembly" with "a top piece." *Id.* at 13 (internal quotation marks omitted).

"Claim interpretation is a question of law amenable to summary judgment." *Intellicall, Inc. v. Phonometrics, Inc*., 952 F.2d 1384, 1387 (Fed. Cir. 1992). "[D]isagreement over the meaning of a term within a claim does not necessarily create

6

a *genuine* issue of material fact." *Id.*

First, defendant argues that its accused bed does not include an "extendable structure housed within said base assembly" wherein "said extendable structure supports said front wall and said extension panel when said front wall and said extension panel are in the open position." Docket No. 70 at 10. The Court did not construe the term "extendable structure," finding that it required no construction because it was defined by the elements it comprises. Docket No. 54 at 23-24. However, there is no dispute that the accused bed contains an "extendable structure housed within [the] base assembly" – more specifically, the bed's extendable drawer and drawer glides. *See* Docket No. 70 at 11; Docket No. 83 at 11. Instead, the parties' dispute concerns whether said extendable structure "*supports* said front wall and said extension panel when said front wall and said extension panel are in the open position." Docket No. 70 at 10 (emphasis added). Defendant contends that the accused bed's extendable drawer does not support the bed's extension panel and, therefore, the accused bed does not include this limitation. *Id.* Plaintiff responds that, "[f]or the evidentiary reasons enunciated and referenced above in Plaintiff's response to Defendant's Statement of Undisputed Material Facts at ¶ 5-6,[3] there is, at the least, a question of fact for the jury on this issue." Docket No. 83 at 11.[4]

---

[3] Specifically, plaintiff contends that "the 18[-]inch drawer firmly supports the front wall, which extends approximately 30 inches," and that "[t]he drawer and the front wall then act together to support the extension panel that extends to approximately 55 inches." Docket No. 83 at 3, ¶ 5.

[4] Plaintiff also asserts that "nowhere is this limitation found in the patent" and that defendant "is trying to limit the scope of Plaintiff's patent by including a limitation that does not exist in the properly construed claim." Docket No. 83 at 11. Plaintiff misreads

7

The Court did not construe the term "support" in its claim construction order. *See* Docket No. 54. "The terms in a claim are given their ordinary meaning to one of skill in the art unless it appears from the patent and file history that the terms were used differently by the inventors." *Intellicall,* 952 F.3d at 1387; *see also Mars, Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1373 (Fed. Cir. 2004) (noting that claim terms are given their ordinary and customary meaning "[u]nless there is an express intent to impart a novel meaning to the claim terms"); *see also Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) ("To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning.") "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner*, 669 F.3d at 1365.

Each time the word "support" is used in the specification, it is used in a way consistent with its plain and ordinary meaning – i.e., to prop up or serve as a foundation for. *See, e.g.*, Docket No. 40-2 (the '758 patent specification) at 12, col. 3, ll. 40-43 ("The rails and drawers are *supported* by casters to enable the drawers and rails to be extended away from the cabinet and to create a level frame to *support* the sleeping platform."); *id.* at col. 3, ll. 65-67 ("The rails rest on casters on the floor and *support* the

---

defendant's argument as a contention that the "extension panel must provide some arbitrary level of support basically in pounds per square inch to meet Claim No. 1 of the '758 patent." *Id.* Defendant's argument does not involve the level of support provided by an extendable panel, but, instead, whether the accused bed contains an extendable structure that provides support to the extension panel at all. This limitation is present in the '758 patent. *See* Docket No. 70-1 at 14, col. 8, ll. 10-11, 35-39.

8

platform off the floor thereby providing further comfort."); *id.* at 11, col. 2, ll. 49-52 ("[t]he telescoping rails provide continuous *support* for the sleeping platform and are configured to *support* the sleeping platform on both sides and in the middle") (emphases added). Plaintiff does not address how a person of ordinary skill in the art ("POSITA") would define the word "support." See Docket No. 75; Docket No. 83. However, defendant's expert, Mr. Ronald Kemnitzer, indicates that "[a]ny qualified POSITA would understand that in order for a structure to 'support' the 'extension panel' (and thus support the sleeping platform) as required by claim 1, it must provide sufficient support to enable the 'extension panel' to function as part of a 'sleeping platform." Docket No. 70-7 at 27, ¶ 43. The Court finds that, based on the use of the word "support" in Claim 1, and confirmed by its use in the specification, the term "support" would be understood by one of skill in the art to have its commonly understood, lay meaning. The Court also finds that, in regard to the term "wherein said extendable structure supports said front wall and said extension panel," a POSITA would understand that the extendable structure must support the extension panel by allowing it to function as a sleeping platform.

Plaintiff argues that a genuine issue of material fact exists as to whether the accused bed's extendable drawer "supports" the bed's extension panel. In aid of its argument, plaintiff relies exclusively on the deposition testimony of its expert, Adrian Slattery, and of defendant's expert, Mr. Kemnitzer. See Docket No. 83 at 11. Mr. Slattery states that the extendable drawer "supports" the fully extended extension panel and opines in his infringement chart that the "support location" is found where the fully extended drawer meets the accused bed's front wall:

9



Docket No. 83-10 at 4 (the accused bed with Mr. Slattery's annotations); *see also* Docket No. 83-4 at 14, 69:13-14.  Specifically, Mr. Slattery states that "[t]he extendable structure [i.e., the extendable drawer] supports the front wall and the extendable structure supports the extension because it's connected by the hinge".  Docket No. 83-4 at 15, 70:1-3.

    Mr. Slattery's testimony does not create a genuine issue of material fact.  First, infringement opinions "reached using words in ways that contradict their plain meaning" do not create a material factual dispute for trial.  *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004).  In *Dynacore*, the Federal Circuit affirmed the district court's grant of summary judgment of noninfringement upon finding that the plaintiff's experts' "conclusory assertions . . . that a critical claim limitation [was] found in the accused device" did not create a genuine issue of fact

where the assertions depended on a construction of terms that contravened the words' plain meaning. *Id.*

Mr. Slattery's contention that the extendable drawer "supports" the extension panel contradicts the plain and ordinary meaning of the term "support." Claim 1 of the '758 patent claims an "extendable structure [that] supports said front wall and said extension panel *when said front wall and said extension panel are in the open position*." Docket No. 40-2 at 14, col. 8, ll. 35-37 (emphasis added). Thus, the extendable drawer must prop up or serve as a foundation for the extension panel when the extension panel is fully extended. As admitted by Mr. Slattery, the extendable drawer extends approximately eighteen inches from the front of the cabinet – approximately one foot shorter than the fully extended front wall, which extends thirty inches, Docket No. 83-4 at 8, 60:20-21; *id.* at 9, 61:15-18, and approximately three feet shorter than the fully extended extension panel, which reaches a distance of approximately fifty-five inches from the front of the cabinet. *Id.* at 8, 60:24-25. Mr. Slattery nevertheless opines that the "support location" is located where the end of the drawer meets the front wall – at most, eighteen inches from the front of the cabinet, *see* Docket No. 83-10 at 4, but that this drawer supports the length of the fully extended extension panel for an additional three feet. Thus, Mr. Slattery does not claim that the drawer of the accused bed directly supports the extension panel. Instead, his position is that the drawer directly supports the front panel and the front panel, via the hinge connecting the front panel to the extension panel, directly supports the extension panel.

Mr. Slattery admits that, if the accused bed did not have the independent support

11

pieces located underneath the extension panel – *see id.* (showing the legs that are not at issue regarding Claim 1) – the bed would not work for its intended purpose. Specifically, when asked about a bed "[t]hat has support that only extends 18 out of the 55 inches and has nothing else but two hinges to hold it in place," he stated that "[i]t would break." *See* Docket No. 83-4 at 13, 68:1-4; *see also id.* at 12, 66:13-17; *id.* at 13, 68:19-22 (stating that the bed would not serve its intended purpose "if the drawer were the only structure to support the extension panel"). Mr. Slattery's use of the word "support" in the term "wherein said extendable structure supports said front wall and said extension panel when said front wall and the extension panel are in the open position" is not consistent with the ordinary meaning of the word to one skilled in the art, who would understand the term to require that the extendable structure provide sufficient support to enable the extension panel to function as part of the sleeping platform. Because Mr. Slattery's conclusion is only "reached using words in ways that contradict their plain meaning," this testimony is insufficient to create a genuine dispute of material fact. *See Dynacore*, 363 F.3d at 1278.

Plaintiff cites deposition testimony of Mr. Kemnitzer regarding a hypothetical question where the accused bed does not have the additional independent support piece under the extension panel, *see* Docket No. 83-10 at 4, and where a forty-pound, three-foot-tall child enters the fully extended bed "on the front two-thirds . . . near the cabinet assembly." Docket No. 83-5 at 11-12, 60:11-61:12. Mr. Kemnitzer testified that, in this hypothetical situation, the bed would not necessarily break. *Id.* at 61:11-13. Such testimony, however, does not help plaintiff's argument that the extendable drawer "supports" the extension. If this hypothetical child entered the accused bed "on the

front two[-]thirds . . . near the cabinet assembly," i.e., entirely on the extended front wall, then the extension panel would bear no weight at all. In this hypothetical scenario, the extension panel – experiencing no real change in force – would not require any support. The bed's hypothetical ability to withstand force on its "front two[-]thirds" does not demonstrate that the extendable drawer "supports" the extension panel for its intended purpose. Therefore, Mr. Kemnitzer's answer to this hypothetical question does not create a genuine issue of material fact "such that it might lead a reasonable jury to return a verdict for the nonmoving party." *Allen*, 119 F.3d at 841.

Because there is no genuine issue of material fact that the accused bed does not contain all elements found in Claim 1 of the '758 patent, defendant is entitled to summary judgment on this claim. *Elkay*, 192 F.3d at 980. Correspondingly, plaintiff's motion for summary judgment on this claim will be denied. Because the Court's ruling on this issue is dispositive, the Court declines to address defendant's second and third points.

### B.  Doctrine of Equivalents

It is undisputed that, in plaintiff's final infringement contentions, plaintiff only raised allegations that the accused cabinet bed directly infringes Claim 1 of the '758 patent. Docket No. 83 at 2, ¶ 3. Plaintiff did not raise an argument under the doctrine of equivalents. *See* Docket No. 60. However, plaintiff states that its infringement contentions "did not disclaim the possibility of the jury receiving jury instructions on the possibility of [it] finding infringement under the doctrine of equivalents, which is a question of fact for the jury." Docket No. 83 at 2, ¶ 3.

"The Federal Circuit has never explicitly held that a party is required to plead doctrine of equivalents, and the district courts are split as to whether such express pleading is required." *Teashot LLC v. Green Mountain Coffee Roasters, Inc.*, No. 12-cv-0189-WJM-KMT, 2014 WL 485876, at *6 (D. Colo. Feb. 6, 2014). In *Teashot*, the district court decided that, "[g]iven th[e] lack of clear and binding guidance" from the Tenth Circuit, it was "unwilling to find waiver based *solely* on the fact that Plaintiff failed to include the doctrine of equivalents in its pleadings." *Id.* It nevertheless found that the plaintiff had waived a claim under the doctrine of equivalents because it had failed to timely disclose it as an infringement theory, waiting until the close of fact discovery before including it in its supplemental infringement contentions. *Id.* at *7-8.

Plaintiff disclosed its final infringement contentions on October 29, 2019. Docket No. 60. In them, plaintiff did not disclose an infringement theory under the doctrine of equivalents. *See id.* Moreover, plaintiff has not raised an argument under the doctrine of equivalents in its response to defendant's motion to dismiss or in its own motion for summary judgment. *See* Docket No. 83; Docket No. 75. The Court finds that, following the reasoning of *Teashot*, plaintiff waived any claim under the doctrine of equivalents and, even if the Court were to assume that plaintiff had not waived the claim, its failure to make any argument under this theory at the summary judgment stage precludes the Court from considering the issue.

### C.  Plaintiff's Remaining Claims

In its motion for summary judgment, defendant argues that any remaining claims of plaintiff's should be dismissed with prejudice. Docket No. 70 at 19. More

specifically, defendant notes that plaintiff's complaint alleges infringement based on defendant's Standard Bed – the accused bed – and its Premium Bed. *Id.*; *see also* Docket No. 5 at 5-6, ¶¶ 30, 38; Docket No. 1-2 at 7-8 (defendant's Premium Bed). On October 12, 2017, the magistrate judge granted defendant's [Corrected] Motion to Strike CabinetBed's Premium Product Line from Plaintiff's Infringement Contentions [Docket No. 34] and struck all allegations concerning defendant's Premium Beds from plaintiff's infringement contentions. Docket No. 42 at 6. Thereafter, in its final infringement contentions, plaintiff elected to pursue its infringement contentions only on Claim 1 of the '758 patent, abandoning any claims related to the '139 patent. Docket No. 60 at 2-3.

Plaintiff stipulates to the dismissal with prejudice of its claim alleging infringement of the '139 patent. Docket No. 83 at 16. Plaintiff also "acknowledges that [it] cannot pursue infringement in this case of [its] '758 patent by the Defendant's Premium Beds." *Id.* It argues, however, that its claims concerning defendant's Premium Beds should be dismissed without prejudice because those claims "have not been litigated on the merits and thus no dismissal with prejudice concerning them is proper." *Id.* at 16-17.

The Court agrees with plaintiff. The Premium Bed allegations were struck pursuant to defendant's motion to strike, which was based on plaintiff's failure to comply with D.C.COLO.LPtR 4 when plaintiff failed to identify defendant's premium line of beds in its claim construction chart. Docket No. 42 at 2-3. The magistrate judge struck plaintiff's Premium-Bed-based infringement contentions under Rules 16 and 37 of the Federal Rules of Civil Procedure and, finding that plaintiff had not demonstrated good cause for its failure to include a claim chart for the Premium Beds, precluded plaintiff

"from modifying its contentions to accuse those products in the future." *Id.* at 6; *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006) (stating that the patent rules "are essentially a series of case management orders" and that a "court may impose any 'just' sanction for the failure to obey a scheduling order, including 'refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence.'") (quoting Fed. R. Civ. P. 16(f)).

Defendant's motion to strike was referred to the magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 72 of the Federal Rules of Civil Procedure, which permit magistrate judges to resolve nondispositive motions. *See* Docket No. 14; Docket No. 35. While 28 U.S.C. § 636(b)(1)(A) lists a number of dispositive motions – which does not include a motion to strike – the relevant inquiry in determining whether a motion is dispositive "focuses not on the title of the motion but rather on the effect of the order." *ClearOne Commc'ns, Inc. v. Chiang*, 2010 WL 1257750, at *2 n.5 (D. Utah Mar. 25, 2010). If the magistrate judge's striking of plaintiff's infringement contentions as a sanction had the effect of dismissing those claims with prejudice, such ruling would have been dispositive of those claims and would have been beyond the authority of the magistrate judge. *See* Fed. R. Civ. P. 72(b)(1) (stating that, when assigned to resolve a dispositive motion, the magistrate judge must enter a recommended disposition rather than a dispositive order). Accordingly, the Court construes the order striking plaintiff's infringement contentions as a non-dispositive action by the magistrate judge. The Court dismisses plaintiff's claims alleging infringement of the '758 patent by defendant's Premium Beds without prejudice.

### D. Defendant's Counterclaims

Despite the Court's ruling on defendant's motion for summary judgment and its dismissal of plaintiff's claims, certain claims still remain. Specifically, defendant has raised two counterclaims against plaintiff, seeking a declaratory judgment that it did not infringe upon either of the '139 or '758 patents. *See* Docket No. 8 at 14-15.

As set out above, plaintiff abandoned its claims regarding the '139 patent. It also appears that defendant subsequently abandoned its counterclaim seeking a declaratory judgment as to the '139 patent. *See* Docket No. 95 at 2 (stating in final pretrial order that defendant "asserts *a* counterclaim seeking a declaratory judgment of noninfringement" and discussing only the '758 patent) (emphasis added). Accordingly, the Court will dismiss defendant's '139 patent counterclaim as moot. *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) ("[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint."); *Expertise Inc. v. Aetna Fin. Co.*, 810 F.2d 968, 973 (10th Cir. 1987) ("[T]he pretrial order is the controlling document for the trial.").

As to defendant's counterclaim on the '758 patent, the Court finds that, given its ruling on defendant's motion for summary judgment, defendant's counterclaim is moot insofar as it seeks a declaratory judgment that it did not infringe Claim 1 of the '758 patent. The counterclaim, however, is not limited to Claim 1. *See* Docket No. 8 at 15, ¶¶ 14-15. The Court therefore orders defendant to advise the Court whether it intends to continue pursuing what remains of its declaratory judgment counterclaim on the '758 patent.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that Defendant's Motion for Summary Judgment and for Dismissal With Prejudice of All Claims Involving Either U.S. Patent No. 6,851,139 or CabinetBed's Premium Bed [Docket No. 70] is **GRANTED**. It is further

**ORDERED** that Plaintiff's [Corrected and Re-Filed] Motion for Summary Judgment on Liability for Patent Infringement of Claim No. 1 of the '758 Patent [Docket No. 75] is **DENIED**. It is further

**ORDERED** that, insofar as plaintiff alleges infringement of the '758 patent based upon defendant's Premium Beds, plaintiff's claims are **DISMISSED** without prejudice. It is further

**ORDERED** that plaintiff's remaining claims are **DISMISSED** with prejudice. It is further

**ORDERED** that, by January 3, 2020, defendant shall file a written notice indicating whether it intends to pursue what remains of its counterclaim on the '758 patent.

DATED December 23, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge